[Civil No. 1554.   Filed March 30, 1918.]

[171 Pac. 906.]

ARIZONA EASTERN RAILROAD COMPANY, a Corporation, Appellant, v. STATE, Appellee.

1. CONSTITUTIONAL LAW — VALIDITY OF STATUTES — CONSTRUCTION OF CONSTITUTION.—It will be presumed that no clause of the Constitution is without effect, and the constitutionality of a statute will be determined in the light of the whole Constitution.

2. RAILROADS — VALIDITY OF STATUTES — CORPORATION COMMISSION.— Under Constitution, article 15, sections 2, 3, 10, the exclusive power of control over railroads, particularly police power, is not given to the Corporation Commission, and the legislature had power to pass Civil Code of 1913, paragraphs 2166, 2168, prohibiting and providing a penalty for railways running trains of more than 70 cars.

[As to validity of regulation by public service commission of extent of train service to be furnished by railroad, see note in Ann. Cas. 1917B, 1217.]

APPEAL from a judgment of the Superior Court of the county of Maricopa.   R. C. Stanford, Judge.   Affirmed.

Mr. G. P. Bullard and Mr. E. S. Ives, for Appellant.

Mr. Wiley E. Jones, Attorney General, and Mr. R. W. Kramer and Mr. George W. Harben, Assistant Attorneys General, for the State.

FRANKLIN, C. J.—The Revised Statutes of Arizona (Civ. Code) of 1913, provide as follows:

"Par. 2166. It shall be unlawful for any person, firm, company or corporation, operating any railroad in the state of Arizona, to run, or permit to be run, over his, their, or its line of road, or any portion thereof, any train consisting of more than seventy freight, or other cars, exclusive of caboose."

"Par 2168. Any person, firm, association, company, or corporation, operating any railroad in the state of Arizona, who shall willfully violate any of the provisions of this act, shall be liable to the state of Arizona for a penalty of not less than one hundred dollars, nor more than one thousand dollars, for each offense; and such penalty shall be recovered, and suits therefor brought by the Attorney General, or under his direction, in the name of the state of Arizona, in any county through which such railway may be run or operated, provided, however, that this act shall not apply in cases of engine failures between terminals."

The Attorney General brought a suit in the name of the state of Arizona against the railroad company to recover a penalty under the statute. The complaint, in substance, charged the railroad company with willfully operating a train between certain terminals consisting of more than 70 freight-cars exclusive of the caboose, which act in operating said train of cars was not the result of an engine failure or failures between terminals. The state had the judgment as prayed, from which the railroad company appeals. Paragraph 2166, *supra,* is not criticised as an improper subject for legislative action, but the want of power in the legislature to enact the law is asserted as the defense of appellant to the suit; the contention being that under section 3 of article 15 of the Constitution the exercise of such governmental power vests in the Corporation Commission to the exclusion of any other agency of government.

In the case of *State* v. *Tucson Gas & Electric Co.,* 15 Ariz. 294, 138 Pac. 781, this court had occasion to consider this provision of the Constitution with reference to the power to fix and prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected by public service corporations within the state for services rendered therein. It was there determined that such power was by the instrument vested exclusively in the Corporation Commission, but it is obvious that such a determina-

tion may not be a guide to the solution of the question presented in this record, and, in resting the argument upon the mere citation of that case, the appellant throws no light upon other provisions of the Constitution that must be determinative of the matter now before us.   If it can be prevented, no clause, sentence, or word in the Constitution shall be superfluous, void, or insignificant; it being the duty of this court as an expositor to make a construction of all parts of the Constitution together, and not of one part only.   It was observed by the great Chief Justice, in *Marbury* v. *Madison,* 1 Cranch, 137, 2 L. Ed. 60, that it cannot be presumed that any clause in the Constitution is without effect, and a construction which would lead to such result is inadmissible, unless the language of the Constitution renders it imperative.

The appellant, Arizona Eastern Railroad Company, is a corporation for the transportation of persons and property for profit.   It is a railway heretofore constructed in this state. Section 10 of article 15 of the Constitution provides:

"Railways heretofore constructed, or that may hereafter be constructed, in this state, are hereby declared public highways, and all railroad, car, express, electric, transmission, telegraph, telephone, or pipe-line corporations, for the transportation of persons, or of electricity, messages, water, oil, or other property for profit, are declared to be common carriers and subject to control by law."

It is seen that the appellant comes within the declaration of this section.   Anyone who contends that this provision is not to have its full measure of application must have a case that comes within some other section which cuts it down, or else that the section itself is so repugnant to the general purview of the Constitution that it can be given no rational meaning.   In section 10, *supra,* no concealment of the meaning may possibly occur by reason of the language there employed. It is plain and unambiguous.   Not a dubious word appears. The general intent and meaning of the section stands out in bold relief.   A railway as a public highway and a railroad corporation within the enumeration of corporations classed as common carriers is subject to control by law.   If there be a prohibition or limitation, then, upon the exercise of this control, we must find the particular clause which subjects it to a limitation or qualification.   We have in this section a general intention expressed in the instrument, but if in any

other parts we find a particular intention expressed which is incompatible with this general intention, the particular intention is to be considered in the nature of an exception. The particular intent incompatible with the general intent will be treated as an exception; the general intent being restrained to that extent only as may be imperatively necessary to the fitness of the matter contained in the exception.

In the Tucson Gas & Electric Company case, we found a particular intent in the matter of prescribing classifications, rates, and charges to be made and collected by public service corporations contained in section 3 which was incompatible with the general intent found in section 10; that the authority of the Corporation Commission to prescribe classifications, rates, and charges under said section is exclusive. Construing the various sections of article 15 of the Constitution together, and looking at the language employed with a regard to the general purview of the instrument, no other construction is possible if its several provisions are to be harmonized and made into a workable instrumentality. But it by no means follows that such an interpretation calls for an expression that the people have surrendered all governmental power over all corporations as they are classified either as public service corporations, common carriers, or public highways. Yet, if the view pressed upon this court by the appellant is to prevail, it naturally follows that the extent and elasticity of the power conferred upon the Corporation Commission in section 3 is subversive of all legislative control whatsoever, and this regardless of other provisions to be found in the Constitution bearing upon the matter; that, by construction, section 10 is so much Dead Sea fruit turning to ashes upon the lips. It is perfectly clear that no such meaning can be deduced from article 15 if it be articulated and a general purview of its provisions obtained. It will be observed by section 2 that corporations are classified as public service corporations:

"Sec. 2.    All corporations other than municipal engaged in carrying persons or property for hire; or in furnishing gas, oil, or electricity for light, fuel or power; or in furnishing water for irrigation, fire protection, or other public purposes; or in furnishing, for profit, hot or cold air or steam for heating or cooling purposes; or in transmitting messages or furnishing public telegraph or telephone service, and all

corporations other than municipal, operating as common carriers, shall be deemed public service corporations.''

In section 3 follows an enumeration of the powers and duties of the Corporation Commission with reference to this class of corporations. In section 10, railways are declared to be public highways, and after this declaration follows an enumeration of certain corporations—a railroad corporation being included—which are declared to be common carriers and subject to control by law.

Compared with section 2, in section 10 different words are used. There is a different nomenclature used in placing these corporations in the different classes. The natural presumption would be that the difference in language and in nomenclature was intended to express different ideas; each class to be governed by a separate purpose and to promote a particular object in view. The change of the form of expression in the two sections, in view of the entire enactment in which they occur, can indicate nothing else than a purpose to differentiate or change the meaning of the two sections. It is reasonably apparent from a consideration of the language of sections 2 and 3 that the idea there prevailing is the public service corporation, with those functions of the corporation uppermost which are called into activity and pertinent to its contact with the public. In short, the transaction of its business with the public.

''Sec. 3. The Corporation Commission shall have full power to, and shall prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, *and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state,* and *may* prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, *and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health of the employees and patrons of such corporation. . . .* '' (Italics ours.)

The language of the fore part of this section is mandatory and compelling. The after part is permissive and discretionary. To prescribe classifications, rates, and charges of

public service corporations is the duty, and the exclusive duty, of the Corporation Commission. Following this expression of duty is the sentence "and make reasonable rules, regulations and orders by which such corporations shall be governed in the transaction of business within the state." If a man cannot be known from himself, we speak in the popular phrase, then he may be known from his associates. So with a word or sentence in the Constitution or statute; the meaning of such a word or phrase, if it be doubtful, may be ascertained by reference to the meaning of words or phrases associated with it. If such happen to be dubious, the meaning may be established by the context, or by comparing them with other words or sentences in the same instrument. The rules of interpretation furnish some fixed standard by which to measure these things, to measure power and to limit prohibition.

It is noted in the first part of section 3 that the full power given to the Corporation Commission to make reasonable rules, regulations, and orders by which public service corporations shall be governed in the transaction of business within the state is a grant in general terms, and is associated with and directly follows the full power to prescribe classifications, rates, and charges, which is a specific power granted in particular terms and directly related to the subject matter of the transaction of its business by a public service corporation. Whether, if there be doubt as to the extent of the power thereby granted in general terms, such doubt may be reasonably resolved by considering the two grants of power together, one specific and the other general, under the maxim *noscitur a sociis*, or within the rule governing the construction of statutes that general terms following particular ones must be tied to and made only to apply to such things as are *ejusdem generis* with those comprehended in the specifications, is a matter yet subject to conjecture. The case at bar requires no solution of the question whether this grant of general power covers more or less ground than is reasonably necessary and proper to effectuate the objects of, and give full effect and vitality to, the grant of specific power. We merely glance in at the door, because the facts of this case require no critical survey of the contents of the room. But we are clearly of the opinion that the general powers granted imperatively in the first part of section 3 have not the same

meaning and purpose which is contained in the permissive power granted to the Corporation Commission to make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health of the employees and patrons of public service corporations, which grant of power is contained in the last part of the section. That these two grants of power not only admit of but demand two separate senses. If, by construction, the first general grant is made to cover all power whatsoever, and be exclusive of any other agency, then the specific exclusive power to prescribe classifications, rates, and charges is superfluous, as is also the permissive authority given to make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health of the employees and patrons of the public service corporations. It must likewise follow as a natural sequence that section 10 of article 15 of the Constitution is also a superfluity; that the words designating railways as public highways, and railroad corporations as common carriers, and subjecting them to the control of the law, are the mere skins of thought with no body or meaning whatsoever; that the entire section is an exotic encumbering the ground of the Constitution, and not a plant indigenous to its soil. We are not called upon, nor is this court permitted, to involve its provisions with an incongruity which must result in so manifest an absurdity. By comparing the commanding words employed in the first part of section 3 with the permissive words found in the last part thereof, and measuring them by the extent of power reserved in section 10 to the legislative branch of the government, we are thus afforded opportune and helpful indication that the grant of power contained in the first part of section 3 is not to be applied without some limitation. It is perfectly clear that neither by direct language, nor by any necessary implication, from the powers granted to the Corporation Commission in section 3, is the police power in this state over a railway as a public highway, or over a railroad corporation as common carrier, vested exclusively in the Corporation Commission. It is equally clear that this power of the state over a railway as a public highway, and over a railroad corporation as a common carrier, may, by a plain mandate, and in the emphatic language of the Constitution, be exercised by the law-making

department of the government. This is the extent of the matter that must now be determined.

That the statute, in this case attacked for want of power in the legislature to enact it, has a substantial relation to an object as to which the state is competent to legislate under its police power is not questioned, and the exercise of that power by the legislature, being nowhere denied in the Constitution, but expressly sanctioned and reserved by the instrument to the legislative department, it follows that the judgment of the superior court must be affirmed. It is so ordered.

ROSS, J., concurs.

CUNNINGHAM, J. (Concurring Specially).—Paragraph 2166, Revised Statutes of Arizona (Civ. Code) of 1913, attacked in this appeal on the grounds of constitutional invalidity owing to a lack of power in the legislature to enact, is in effect, if valid, a restriction upon the charter rights granted the appellant by the general law of its organization. Subdivisions (12) and (14) of paragraph 2151 of chapter 4, title 9, of the Revised Statutes of Arizona (Civ. Code) of 1913, grant to railroad corporations organized thereunder power:

(12) "To establish, execute and enforce all useful and proper rules and regulations for the management of their trains and business, and to secure the comfort, safety and good behavior of their passengers, employees and agents"; and (14) "such corporations shall have such further powers as may be necessary to enable them to exercise and enjoy, fully and completely, the powers granted by this title, and generally all such powers as are usually conferred upon, required and exercised by railroad companies."

Paragraph 2150, Id.:

" . . . And generally for the purpose of constructing and maintaining and operating said railroad . . . and carrying on their business, said corporations shall have and possess all the rights, powers, and privileges which are enjoyed by natural persons."

The matter of the number of cars making up a train moved over a railroad is a matter pertaining to the operation of trains, and principally concerns the corporation and its em-

ployees. The public interests are only remotely affected by the length of the trains moved. A natural person operating a railroad would certainly have the right, power, and privilege, unless restricted by law, to order made up a train consisting of any number of cars, and require such train to be moved over his railroad to the desired destination.

No pretense is made that the Corporation Commission is granted power under section 3 of article 15 of the Constitution to make rules, regulations, and orders which have the effect of altering, amending, or repealing the charter rights or powers of public service corporations. Section 2, article 14, State Constitution, reserves to the legislative power of the state the exclusive right to interfere with the charter powers of corporations formed under general law, as follows:

"  . . . Laws relating to corporations may be altered, amended, or repealed at any time, and all corporations doing business in the state may, as to such business, be regulated, limited, and restrained by law."

Hence the charter rights of railroad corporations organized under the provisions of chapter 4 of title 9 of the Revised Statutes of Arizona of 1913, to move trains composed of any number of cars, was subject to regulation, limitation, or restraint by law. The agency prescribing the "law" providing the regulation, limitation, or restraint to which the general incorporating laws are subject, of which the corporation had notice at the time of its organization, is definitely ascertained by reference to section 14 of article 14 of the State Constitution, reading as follows:

"This article shall not be construed to deny the right of the legislative power to impose other conditions upon corporations than those herein contained."

Section 1, article 4, of the State Constitution expressly confines the exercise of the legislative power of government to a legislature, with a reserved power in the people to propose laws and amendments to the Constitution and to enact or reject such laws and amendments at the polls, independently of the legislature. Hence the power of the legislature to enact paragraphs 2166 and 2168, prescribing a regulation limiting the power of the appellant corporation in the operation of its freight trains with regard to the number of cars composing such trains, and prescribing a penalty for a violation of such regulation, is a valid exercise of legislative au-

XIX Ariz.—27

thority reserved in the government. This power is reserved to be exercised only by the legislative power of the government. The power is not reserved to be exercised by the Corporation Commission, but by the legislative power alone. The intimate relation of the public to the acts regulated by paragraphs 2166, which would bring the regulation within the police power to make, is absent from this case, but ample power is held in reserve by the constitutional provisions indicated to authorize, and does authorize, the enactments in question by the legislature.

I concur in the order of the court, but I do not concur in placing the authority of the legislature to enact the law upon the police power of government. I prefer to base the legislation upon the powers expressly reserved, and to hold the exercise of the powers so clearly falling within the constitutional reservations. The judgment should be affirmed.