[Civil No. 1634.   Filed April 17, 1919.]

[180 Pac. 151.]

THE COUNTY OF GREENLEE, Appellant, *v.* FRANK B. LAINE, Appellee.

1. JUDGES—COMPENSATION—INCREASE OF SALARY DURING TERM—CONSTITUTIONALITY OF STATUTE.—The specific provisions of Constitution, article 6, section 24, that no judge's salary shall be reduced during the term of office for which he was elected, cannot be construed to prevail over the general provisions of article 4, part 2, section 17, forbidding the compensation of any public officer to be increased or diminished during his term of office, so as to authorize a legislative enactment increasing the salary of a superior judge during his term of office, under the rule that specific provisions prevail over general terms or expressions.

2. JUDGES—COMPENSATION—INCREASE DURING TERM—STATUTES—CONSTITUTIONALITY.—Merely because Constitution, article 6, section 24, only forbids a reduction of a judge's salary, it does not impliedly authorize an increase thereof, in view of article 4, part 2, section 17, forbidding compensation of any public officer to be increased or diminished during his term of office.

3. STATUTES—CONSTRUCTION—EXTENSION BY IMPLICATION.—Where no exception in a statute is made in terms, none will be made by mere implication or construction.

4. JUDGES—COMPENSATION—INCREASE DURING TERM—CONSTITUTIONAL PROVISIONS.—Constitution, article 4, part 2, section 17, forbidding the compensation of any public officer to be increased or diminished during his term of office, does not except judges by implication, in view of the Constitution as a whole.

5. JUDGES—COMPENSATION—INCREASE DURING TERM—CONSTITUTIONAL PROVISIONS.—Constitution, article 4, part 2, section 17, forbidding the compensation of any public officer to be increased or diminished during his term of office, is a constitutional declaration of policy that public officers' compensation, when once fixed, should be inviolate, at least during the term for which the officer was elected.

6. CONSTITUTIONAL LAW — CONSTRUCTION OF PROVISIONS — PURPOSE.— The interpretation of constitutional provisions is to be made in view of the history of the times, the evil to be remedied, and the purpose to be accomplished.

7. JUDGES—COMPENSATION—STATUTES INCREASING SALARY—CONSTITUTIONALITY.—Laws of 1917, chapter 61, increasing the salary of superior judges, is not unconstitutional, when applied to officers elected after its passage.

[As to statute relating to officers, see note in 64 **Am. St. Rep.** 103.]

APPEAL from a judgment of the Superior Court of the county of Greenlee. A. G. McAlister, Judge. Reversed and remanded.

Mr. Wiley E. Jones, Attorney General, Mr. D. W. Ling and Mr. W. E. Ryan, for Appellant.

Mr. A. R. Lynch, for Appellee.

ROSS, J.—Appellee, who is the superior judge of appellant county, brought suit to recover a balance of salary claimed to be due him. At the time he was elected, 1914, and at the time of his induction, January, 1915, the salary attached to the office of judge of the superior court of Greenlee county was fixed by legislative act at $3,500 per annum. Section 3222, Civil Code 1913.

The third legislature, on March 14, 1917, passed an act (Laws 1917, c. 61), with the emergency clause, fixing the salaries of state and county officers. By the terms of this act, the salaries of the following state officers were neither increased nor diminished: Secretary of the state, state auditor. state treasurer, superintendent of public instruction, members of the corporation commission, state mine inspector, members of the tax commission, members of the supreme court, clerk of the supreme court. The salaries of these officers remained the same as fixed by the Constitution and the act of 1912 (chapter 2, title 15, Civil Code). However, the salary

of the Governor was increased from $4,000, as fixed by the Constitution and the Laws of 1912, to $6,500, as also was the salary of the attorney general increased from $2,500 to $4,000 per annum. The salaries of some of the superior judges were slightly increased; that of the appellee being raised from $3,500 to $4,000 per annum. This act was approved on the above date by the Governor, and therefore comes to us with the legislative and executive sanction and assertion of its constitutionality. Appellant's board of supervisors disallowed appellee's claim for the legislative increase for the months of March to December, 1917, and January, 1918, inclusive. Hence this suit.

The appellant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause -of action. The appeal is from the order overruling demurrer and from the judgment. The only point raised is as to the power of the legislature to increase the salary of the appellee during his term of office. If that power existed in the legislature the judgment was right, but if that power did not exist in the legislature the judgment was wrong. The question involves an examination of some of the provisions of our Constitution, notably section 17, article 4, part 2, reading:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office," and section 24, article 6, reading:

"No change made by the Legislature in the number of judges shall work the removal of any judge from office; and no judge's salary shall be reduced during the term of office for which he was elected."

It is the contention of appellee that, when these provisions are taken and construed together, their meaning and import is that the legislature may increase the salary of the superior judges of the state during their terms of office. To sustain his position, he relies upon two well-known rules of construction:

The first is that specific or particular provisions of a statute or constitution will prevail over general terms or expressions. But, to have that effect, the two provisions must conflict with each other. If there is no conflict, if they coalesce or agree, the rule can have no application. Section 17 comprehends

both increases and decreases of compensation, and forbids them during any public officer's term of office. It includes in its terms all "public officers," and announces a rule of compensation binding upon all alike, superior judges among others. Section 24 limits its prohibition to particular public officers, to wit, judges, and the diminution of their salaries during the term for which they were elected. The limitation upon the power of the legislature as contained in section 24 does not affect the restrictions upon the legislature as found in section 17, for both sections prohibit in part the same thing—the reduction of a judge's salary during his term. These provisions are harmonious in agreement. That being so, appellee's rule that particular statutes or provisions should be given effect over general provisions has no application. In 12 Corpus Juris, 709, section 56, it is said:

"Distinct constitutional provisions are repugnant to each other only when they relate to the same subject, are adopted for the same purpose, and cannot be enforced without substantial conflict."

Tested by this very reasonable rule of construction, there is no shadow of conflict or repugnancy between the two provisions of sections 17 and 24.

But it is said that, because section 24 only forbids a reduction of a judge's salary, it impliedly authorizes an increase. That doubtless would be true, if section 24 was the only expression of the Constitution on the subject; but to give it that force here would be to create a conflict with section 17 of the Constitution by implication. No public officer's compensation is excepted from the terms of section 17, and it is a general rule that, where no exception is made in terms, none will be made by mere implication or construction. *Rhode Island* v. *Massachusetts,* 12 Pet. 657–722, 9 L. Ed. 1233; *Cohens* v. *Virginia,* 6 Wheat. 264–378, 5 L. Ed. 257; *Society, etc.,* v. *New Haven,* 8 Wheat. 464, 489, 490, 5 L. Ed. 662; *Gibbons* v. *Ogden,* 9 Wheat. 1, 6 L. Ed. 23; *State* v. *Dircks,* 211 Mo. 568, 111 S. W. 1; *United States* v. *Board of Commissioners,* 216 Fed. 883, 133 C. C. A. 87.

As was said in the last case, "But we cannot be governed by implications against the express language of the statute." It would be a grave and serious step to except judges from the terms of section 17 upon a mere implication. The court cannot write into the Constitution what its makers omitted or

refused to write into it. Those persons commissioned and empowered to write it, and the people who adopted it, did not choose to use language directly excepting the judges and their compensation from the terms of section 17; nor is that instrument, taken as a whole, capable of a construction, by implication or otherwise, permitting members of the judiciary to accept increased salaries.

The other rule of construction invoked by appellee to sustain his contention is the one stated by Judge COOLEY as follows:

"The rule applicable here is that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if possible, and must lean in favor of a construction which will render every word operative rather than one which may make some words idle and nugatory." Cooley, Const. Lim., 5th ed., p. 70.

As we have seen, the two sections involved do not conflict, and therefore require no effort to make them harmonize, and, giving full force and effect to the last rule of construction, no word of section 24 is rendered inoperative. Because the same thing is only measurably provided against by section 24, and is wholly provided against in section 17, does not render the former, or any part thereof, "idle and nugatory." As was said by Mr. Justice McKENNA, in *Pirie* v. *Chicago Title & Trust Co.,* 182 U. S. 449, 45 L. Ed. 1171, 21 Sup. Ct. Rep. 911:

"It does not follow that because the terms of a section are defined elsewhere, or the consequences of its provisions are expressed elsewhere, it becomes a nullity or is defective."

"There is another rule of construction, . . . and it is, where the court finds, in any particular clause, an expression not so large and extensive in its import as those in other parts of the same statute, if, upon a view of *the whole act,* they can collect, from the larger and more extensive expression used in other parts, the real intention of the Legislature, it is their duty to give effect to the *larger expressions.*" *State* v. *Jennings,* 27 Ark. 419, 423.

The same rule, with different phraseology, is found in 36 Cyc. 1131:

"But a particular expression in one part of a statute, not so large and extensive in its import as other expressions in the

same statute, will yield to the larger and more extensive expressions, where the latter embody the intent of the Legislature.''

The plain, explicit and unambiguous language of section 17, as we hope later to show, is a constitutional declaration of policy that public officers' compensation, when once fixed should be inviolate, at least during the term for which the officer was elected. In it is to be found ''the real intent'' of the framers of the Constitution and the people who voted for it.

But, if what we have already said does not convince that the two sections (17 and 24) are not repugnant, but harmonious, and may be allowed to stand side by side without any nullification of one by the other, we submit there is another very cogent and convincing reason why they should not be given the effect contended for by appellee, and that is that they were inserted in the organic law for widely different purposes. Section 17 is found in part 2 of article 4, which treats of the legislative department of the state, and is the enunciation of a general policy affecting the compensation of public officers. Section 24 is the very last section of article 6 treating of the judicial department. Section 2 of this article, among other things, provides that the supreme court shall consist of three judges and that the number may be increased or diminished from time to time by law, but the number shall never be less than three. Section 5 provides that each county shall have at least one superior judge, and if the population of the county is more than 30,000, the law may provide one judge for each additional 30,000, or major fraction thereof; and where there are more judges than one, it provides for the distribution and assignment of the business of the court.

After vesting the legislature with the power to change the number of judges of the supreme court and the superior courts under certain conditions, it was very natural, as well as reasonable and just, that the framers of the Constitution should say, as they did in section 24:

''No change made by the Legislature in the number of judges shall work the removal of any judge from office; and no judge's salary shall be reduced during the term of office for which he was elected.''

This language is predicated on sections 2 and 5 of article 6 in regard to changes in the number of judges, and the reason for it is plainly not to let the division or reduction of the work consequent upon an increase of the number of judges be an excuse to reduce the salary of a judge during his term, or to let a reduction in the number work his removal or affect his salary during the term for which he was elected. Under sections 2 and 5, the legislature may lighten the work of a superior judge by providing for two or more superior judges to do the work the one judge formerly was required to do, or lighten the work of the three supreme court judges by increasing the membership of that court to four or more, but in no event can the salary attached to the office at the time of said judge's election be reduced. Indeed, a reduction of the number of judges shall not take from the judge his salary or have the effect of reducing it.

So it is that section 24 is far from being in conflict, either in words or spirit, with section 17 or the general policy therein announced, but, on the contrary, has for its purpose the strict maintenance of that policy by providing that even the reduction of the number of judges should not work a removal of a judge or affect his salary during his term. The absence from section 24 of a prohibition against an increase of the compensation of a public officer during his term is easily accounted for when the purpose of the section is considered. Its purpose was to prevent an injustice being done a person who had been chosen in the manner provided by law to fill the office of judge. Without its restraining force, the legislature could possibly, under other provisions of the organic law authorizing it to reduce the number of judges, abolish the office of judge, and thereby defeat a successful candidate from a realization of the fruits of his office. While section 17 forbids a diminution of compensation, it does not prohibit the removal of an officer by the abolishment of his office, as section 24 does. *Bogue* v. *Seattle,* 19 Wash. 396, 53 Pac. 548; 22 R. C. L. 579, §§ 293, 294. Section 24 was evidently inserted to protect the officer by insuring him that the happening of the things enumerated in sections 2 and 5, article 6, should not, however it might affect his status or duties, lessen the salary he was made to believe he would be allowed to draw during his term. It was intended as a shield to the

members of the judiciary of the state, and it must be limited in operation to that purpose.

It is a well-established rule that—

"The interpretation of constitutional provisions is to be made in view of the history of the times, the evil to be remedied, and the purpose to be accomplished." *Fargo* v. *Powers* (D. C.), 220 Fed. 697, 700.

Long before Arizona's Constitution was written, the provision of section 17 against increasing or decreasing a public officer's compensation during his term, or some such similar provision, had found a place in many of the Constitutions of the states of the Union. It has been demonstrated over and over that, unless the power to change salaries of public officers during their term was taken from the legislature, much of the valuable time of that body would be consumed in either trying to appease the appetite of importunate constituents for increase of compensation, or to gratify the spleen or grudge of others by passing laws diminishing the compensation of public officers. These evils and a train of others, pernicious in their influence alike upon legislation and upon those promoting or seeking legislation, were well known at the time our Constitution was written and adopted. Hence, the plain, inexorable rule laid down in section 17:

"Nor shall the compensation of any public officer be increased or diminished during his term of office."

This expression is explicit, unambiguous and free from doubt. It is all-inclusive. Mr. Justice LAMAR, in *Lake County* v. *Rollins*, 130 U. S. 670, 32 L. Ed. 1060, 9 Sup. Ct. Rep. 652, says:

"If the words convey a definite meaning which involves no absurdity, nor any contradiction of the other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the court nor the Legislature have the right to add to it or take from it."

To say that section 17, taken in connection with section 24, does not include the members of the judiciary of the state would lead to an "absurdity," in that it would leave, of all the public officers of the state, the judges alone free to solicit and exercise influence to secure increases of their compensation during their term of office. Why this favoritism or advantage should be extended to the judiciary, and no other public officers of the state, is inexplicable, and before we

could persuade ourselves that such was the case, the framers of the instrument would have to use plain and direct words saying so. We would not so hold by implication, or by any strained or doubtful construction of the Constitution.

The reasons that prompted the writers and the ratifiers of the Constitution to provide that all county and state officers should be paid "fixed and definite salaries," which could not be increased or diminished during their term of office, no doubt applied with equal, if not greater, force to judges than to other public officers. Section 17, art. 22; also section 17, art. 4, pt. 2. The conclusion, therefore, is inevitable that the policy declared in section 17 of the Constitution applies to all public officers without exception or discrimination; that its plain and explicit meaning is not and never was intended to be changed by the expressions contained in section 24, but on the contrary, the two sections were inserted for a different object. They not only harmonize, but support each other.

When the finished work, in the form of law, of the other two co-ordinate branches of the government—the legislative and executive—has, in a proper case, been questioned and passed on to us as the representatives of the judicial department for our opinion as to its constitutionality we acknowledge we approach the discharge of our duty with reverence, and, we hope, with all respect due the other branches of the government, for we must remember that the legislators and the Governor who have placed their seal of approval upon the law, like ourselves have taken an oath to support the Constitution. Influenced by that consideration and thought, the courts all over the land have adopted the rule of allowing a law to stand when attacked, if any doubt exists as to its invalidity. It is only when such a law clearly violates the Constitution that we would be justified in striking it down. By giving chapter 61, Laws 1917, a prospective operation, we are able to sustain the action of the other branches of the government in writing it upon our statutes, and at the same time permit no violence to the Constitution.

The fact that the legislature did not have the power to increase the salary of appellee during his term of office does not necessarily make the salary act (chapter 61, Laws of 1917) unconstitutional when applied to officers elected thereafter. The legislature may increase or diminish salaries of public officers. There is no prohibition in the Constitution

against their doing so. The limitation is against the increasing or decreasing of a public officer's salary during his term of office, or the term for which he was elected. The injunction against the changing of the compensation would, however, postpone the operation of chapter 61, Laws of 1917, until after the expiration of appellee's term.

Judgment reversed and case remanded, with direction to sustain demurrer and dismiss complaint.

BAKER, J., concurs.

CUNNINGHAM, C. J. (Dissenting).—I sincerely regret that I am unable to agree with the other members of this court upon the matter of constitutional interpretation and construction giving force and life to legislation. It is a settled rule of interpretation in this state that the presumption and legal intendment is that every clause in our Constitution has been inserted for some useful purpose, and therefore the instrument must be construed as a whole in order to ascertain both its intent and general purpose, and also the meaning of each part. *State* v. *Osborne,* 14 Ariz. 185, 125 Pac. 884; *Arizona Eastern R. R. Co.* v. *State,* 19 Ariz. 409, 171 Pac. 906. This is in line with the authorities of other states. See 12 C. J. 707, note 35. Consequently, as far as possible, each provision of the Constitution must be construed so as to harmonize with all others, yet with a view to giving the largest measure of force and effect to each and every provision that shall be consistent with a construction of the instrument as a whole. *Gherna* v. *State,* 16 Ariz. 344, Ann. Cas. 1916D, 94, 146 Pac. 494.

The controversy presented by this record, then requires this court to determine, from a construction of the Constitution as a whole, the scope of section 17 of part 2 of article 4, and that of section 24 of article 6, and assign to each provision, if possible, its function, which will harmonize, the one with the other, and yet give to each the largest measure of force and effect consistent with a construction of the Constitution as a whole.

Section 17 of part 2 of article 4 is as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into,

nor shall the compensation of any public officer be increased or diminished during his term of office.''

This section was adopted from Washington, there appearing as section 25 of article 2, Constitution of Washington 1889. A similar provision appears in the Constitutions of a number of the states, but the Washington provision is the identical language adopted in the Arizona Constitution. The provision is broad in the scope of its operation, and requires, as a general rule, all persons and officers assuming public duties in any capacity to receive as compensation for such services the amounts fixed at the time the duties are commenced, and be satisfied with such amount as their only compensation, salary, wages, consideration or whatever the recompense for services rendered may be called, and clearly restricts the power of the legislature to grant an amount of compensation other than the amount previously fixed and nothing more. In *State ex rel.* v. *Clausen,* 47 Wash. 372, 91 Pac. 1089, the supreme court of Washington had before it the construction of said section 25, article 2, as it affected a statute increasing the salary of members of the board of control during their term of office, and said:

''The provisions of our Constitution bearing on this subject are as follows: Section 25 of article 2 provides that the compensation of any public officer shall not be increased or diminished during his term of office. Section 25 of article 3 provides that the compensation of state officers shall not be increased or diminished during the term for which they shall have been elected. Section 13 of article 4 provides that judges of the Supreme Court and judges of the superior courts shall, at stated times during their term of office, receive for their services the salaries prescribed by law therefor, which shall not be increased after their election nor during the term for which they shall have been elected. *This provision is not in point,* excepting to show the intention of the framers of the Constitution in relation to the changing of the salaries of any kinds of officers in the state. Section 8 of article 11 provides that 'the salary of any county, city, town or municipal officer shall not be increased or diminished after his election, or during his term of office.' So that it will be seen that it was the positive policy of the Constitution, expressed in every possible way, that the salaries of officers should not be increased during their term of office. This wise provision was no doubt

intended to prevent pernicious activity on the part of the office holders of the state being brought to bear upon the members of the Legislature—a wise provision, which must not be construed out of existence or evaded by legislative enactment.''

This opinion was filed October 19, 1907, and clearly expresses the views of that court, although *dictum*, that judges' salaries are not affected by section 25 of article 2, but are within section 13 of article 4, the constitutional article dealing exclusively with the subject of courts and judges of courts, and the section of that article dealing exclusively with the change of salaries of judges. The provision of the Constitution of Arizona, viz., section 24 of article 6, corresponding with section 13 of article 4 of the Washington Constitution, is as follows:

''No change made by the Legislature in the number of judges shall work the removal of any judge from office; and no judge's salary shall be reduced during the term of office for which he was elected.''

The principal difference between the two provisions with respect to the salaries is that in Washington the legislature is prohibited from increasing the judges' salaries during the term for which they are elected, but the Arizona legislature is prohibited from reducing the judges' salaries during the term for which they are elected. A fairly satisfactory search of the books has disclosed to me that the Constitutions of the following states, in addition to Arizona, prohibit the legislature from reducing the salaries of the judges of the state: Const. Ala. 1901, art. 6, § 150; Const. Ark. 1874, art. 7, § 10; Const. Ind. 1851, art. 7, § 13; Const. Me. 1820, art. 6, § 2; Const. Minn. 1857, art. 6, § 6; Const. R. I. 1842, art. 10, § 6; Const. Tex. 1868, art. 5, § 13.

Section 68 of article 4 of the Constitution of Alabama of 1901 restricts legislation on substantially the same subjects as does section 17 of part 2 of article 4 of the Arizona Constitution. Said provisions prohibit the legislature from passing laws which increase or decrease the fees and compensation of public officers during their terms of office. In respect to both provisions, Alabama and Arizona stand alone, as regards the inhibition against the reduction of the salaries of judges and Washington has both provisions, but inhibits the *increase* of the salaries of the judges.

The supreme court of Alabama has cited sections 68 and 150 a few times, but each time, when section 150 has been cited in connection with the matter of change of salaries the court has evaded an expression. In *Cook* v. *Burke*, 177 Ala. 155, 58 South. 984, the court states as the second subject for inquiry as follows:

"(2) Appellee's right to the fees as affected by section 150 of the Constitution."

After discussion at length of the first point, and disposing of such point, the court determines a former case has considered the question in part and says:

"On identical considerations we now hold that judges of probate presiding in county courts for the trial of misdemeanors are not judges of courts of record within the meaning of section 150 of the Constitution, which provides that judges of courts of record, except probate courts, shall at stated times receive for their services a compensation which shall not be diminished during their official terms; they shall receive no fees or perquisites."

This case in Alabama is clearly authority for holding the law there to be that section 150 of their Constitution affects no officer other than those named in the section. In an earlier case (*State* v. *Gunter*, 170 Ala. 165, 54 South. 283) the court said as follows:

"It is also insisted that the act offends sections 68, 150, and 174 of the Constitution. Section 68, among other things, forbids a decrease of the salary of an officer during his term of office; section 150 prohibits a diminishing of the salary during the official term of justices of the Supreme Court, chancellors, and the judges of the circuit courts and other courts of record, except probate judges; and section 174 relates to removal from office by impeachment. . . . These provisions are intended as a protection to incumbents, at the time of the legislative enactment, and do not apply to officials accepting office subsequent to said legislation. . . . Had Thomas held on to the office of associate judge until the 15th day of November, 1910, he would doubtless be in a position to invoke sections 68, 150, and 174 of the Constitution; but this he did not do, nor can he do so for Brown, who is not complaining."

In this manner the supreme court of Alabama has apparently treated sections 68 and 150 as free of any conflict as affecting judges of courts of record, chancellors, all such judi-

cial officers as are named in section 150, apparently hold-
ing the view, though not deciding, but evading a decision,
that section 150 alone affects the officers named therein as
within its provisions. We make this extended mention of the
decisions of Alabama and Washington for whatever they are
worth. We are unable to evade a determination of the ques-
tion whether judges' salaries are within the contemplation of
section 17 of part 2 of article 4, as included in the words
"any public officer," or whether judges are excluded from the
operation of said section 17 by being included specially in sec-
tion 24 of article 6.

If we assume that the matter of change of the salaries of
the judges is within the will of the legislature, except as
restrained by section 24 of article 6, then beyond a reason-
able doubt the legislature had full power to increase the
salary of the judges by appropriate legislation and declare
the time when the increased salary should become operative,
but the salaries of judges.cannot be reduced during the term
for which the judges were elected. A reduction in amount
of salary is prohibited by said section 24. If section 17 of
part 2 of article 4 is given a construction broad enough to
include judges and effect the legislative change of their
salaries, then we have one provision of the Constitution which
prevents the legislature from increasing the salary of the
judges (section 17 of part 2 of article 4) and two provisions
preventing the legislature from decreasing the judges'
salaries (section 17 aforesaid and section 24 of article 6).
Section 17 of part 2 of article 4 is general in its nature,
broad enough to comprehend all public officers, including
judges. On the other hand, section 24 of article 6 is more
restricted in its scope of operation, intended to affect one
particular class of public officers, viz., judges only. If sec-
tion 17, *supra*, is given force to prohibit the increase of the
salaries of judges during their term of office, then section 24
of article 6 has no force or effect independent of section 17,
*supra*.

In *United States* v. *Chase*, 135 U. S. 260, 34 L. Ed. 117, 119,
10 Sup. Ct. Rep. 757, cited by appellee, the following rule is
stated:

"It is an old and familiar rule that, 'where there is, in the
same statute, a particular enactment, and also a general one,
which, in its most comprehensive sense, would include what

is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within the general language as are not within the provisions of the particular enactment.' "

Citing *Pretty* v. *Solly*, 26 Beav. 610, 53 Eng. Reprint, 1034. Quoting Romilly, M. R., and the case of *State* v. *Commissioners of R. R. Taxation*, 37 N. J. L. 228, and continues:

"This rule applies wherever an act contains general provisions and also special ones upon the same subject, which, standing alone, the general provisions would include.  Endlich on the Interpretation of Statutes, 560."

In *De Winton* v. *Mayor, etc.*, 26 Beav. 543, Romilly, M. R. said:

"I hold that when an act of Parliament contains two sets of provisions, one giving specific and precise directions to do particular things, and the other in general terms prohibiting certain acts which would, in the general sense of the words used, include the particular acts before authorized, then the general clause does not control the specific enactment. . . . I so held in another cause (*Pretty* v. *Solly*, Feb. 15, 1858) on the authority of many cases cited to me.  If the court finds a positive inconsistency and repugnancy in the clauses of an act of Parliament, it may be difficult to deal with the case at all, but as far as it can it must give effect to every clause in it."  54 Eng. Reprint, 1008.

This rule, stated in these two English cases, is treated in *State, etc.*, v. *Commissioner, etc.*, 37 N. J. L. 228, 233, as follows:

"The contention was that this section provided specifically for the taxation of railroad corporations having special provisions in their charters on the subject of taxation, without regard to the consideration whether such provisions were repealable or not, and that therefore, on the rule of construction that, where there is a particular enactment and a general enactment in the same statute, and the latter in its most comprehensive sense would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.  This, in substance, is a rule of construction adopted by Sir John Romilly, M. R., in *Pretty* v. *Solly*, 26 Beav. 610, and *De Winton* v. *Mayor, etc.*, Id. 533,

5 Jurist (N. S.), 883, and is nothing more than another form of giving expression to the principle that the general legislation on a particular subject must give way to special legislation on the same subject.''

2 Lewis' Sutherland on Statutory Construction, section 345, second edition, states the same rule in the following words:

''But one provision may be qualified by another, though it does not profess to have that effect. Words expressive of a particular intent incompatible with other words expressive of a general intent will be construed to make an exception, so that all parts of the act may have effect''—citing cases.

Vattel, Law of Nations, section 316, page 272 (J. Chitty ed.), states as a fifth rule for the interpretation with what relates to the collision or opposition of laws or treaties. On page 271 the writer says:

''There is a collision or opposition between two laws, two promises, or two treaties when a case occurs as to which it is impossible to fulfill both at the same time, though otherwise the laws or treaties in question are not contradictory, and may be both fulfilled under different circumstances. They are considered as contradictory in this particular case; and it is required to show which deserves the preference, or to which an exception ought to be made on the occasion. In order to guard against all mistake in the business, and to make the exception conformably to reason and justice, we should observe the following rules. . . . (5) Of two laws or two conventions we ought (all other circumstances being equal) to prefer the one which is less general, and which approaches nearer to the point in question; because special matter admits of fewer exceptions than that which is general. It is enjoined with greater precision, and appears to have been more pointedly intended.''

12 C. J. 709, section 57, states the rule in these words:

''When general and special provisions of a Constitution are in conflict, the special provisions should be given effect to the extent of their scope, leaving the general provisions to control in cases where the special provisions do not apply.''

The application of these rules of interpretation to the constitutional provisions compels the conclusion that section 24 of article 6 alone applies to judges' salaries, and that, in order for said section 24 to have any measure of force, it must be so applied; that section 17 of part 2 of article 4 must

be understood as prohibiting legislation which increases or diminishes the compensation of all public officers other than the officers mentioned and necessarily included in section 24 of article 6, the compensation or salary of whom may be changed by the legislature at will, except as restricted therein.

The act in question (chapter 61, Laws of 1917), increasing the salary of the judge of the superior court of Greenlee county during his term of office, is not in conflict with section 17 of part 2 of article 4, for the reason that said section 17 of part 2 of article 4 has no application to the change of salaries of judges of the state, and said chapter 61 is in no manner in conflict with section 24 of article 6, or other provision, of the Constitution.

Before we are justified in holding otherwise—that is, in holding that said chapter 61, increasing the salaries of the judges, is conflicting with the Constitution, and therefore void—we must be satisfied beyond a reasonable doubt that the conflict exists between the statute and some specific provision of the Constitution. In *State ex rel. Turner* v. *Hocker*, 36 Fla. 358, 363, 18 South. 767, 768, that court said:

"In passing upon the constitutionality of statutes generally, no matter from what standpoint the attack thereon may be made, it is a well-settled and cardinal rule that nothing but a clear violation of the Constitution will justify the courts in overruling the legislative will; and where there is a reasonable doubt as to the constitutionality of an act it must be resolved in favor of the act, and it should be upheld"—referring to cases cited in note to *Davis* v. *State,* 7 Md. 151, 61 Am. Dec. 331, and other cases cited.

The cases setting forth the degree of certainty which must exist in the minds of the court before holding a statute void for the reason it conflicts with the Constitution are so numerous and so harmonious that the cases cited are sufficient.

Finally, the supreme court, in *Ogden* v. *Saunders*, 12 Wheat. 213, 270, 6 L. Ed. 606, 625, opinion by Mr. Justice WASHINGTON, states the rule as follows:

"I shall now conclude this opinion, by repeating the acknowledgment, which candor compels me to make in its commencement, that the question which I have been examining is involved in difficulty and doubt. But if I could rest my opinion in favor of the constitutionality of the law on which the question arises on no other ground than this doubt so felt and

acknowledged, that alone would, in my estimation, be a satisfactory vindication of it. It is but a decent respect due to the wisdom, the integrity, and the patriotism of the legislative body by which any law is passed, to presume in favor of its validity, until its violation of the Constitution is proved beyond all reasonable doubt. This has always been the language of this court, when that subject has called for its decision; and I know that it expresses the honest sentiments of each and every member of this bench."

The authorities may be cited in great numbers, sustaining the rules of interpretation above referred to, and the degree of certainty the circumstances involved must create in the minds of the judges of the court authorizing a holding that invalidates a statute. To cite them all in support of both or either such matters would be a great burden and of no benefit. I am content to rest upon the authorities cited in this opinion, and necessarily referred to in the authorities so cited, as bearing out to the fullest extent my conclusion; that is, that section 24 of article 6 must be treated as creating an exception to the general provisions of section 17 of part 2 of article 4; that section 24 of article 6 inhibits legislation affecting the change of salaries of the judges of the state, and section 17 of part 2 of article 4 has no application to the said subject.

The other view has the effect, in my opinion, of, first, annulling the clause of section 24 of article 6, referring to change of salary of judges, and, as a result, the statute is forced to conflict with section 17 of part 2 of article 4, and thereby both a constitutional clause and a statute are wiped off the law books, annulled and held wholly inoperative hereafter. I cannot agree to a decision having such effect.

The judgment should be affirmed.

---

As to applicability to nonconstitutional officer of constitutional provision against increase of salary of officer during his term of office, see note in 26 L. R. A. (N. S.) 289.