[Criminal No. 343.   Filed February 18, 1914.]

[138 Pac. 781.]

## STATE, Appellant, v. TUCSON GAS, ELECTRIC LIGHT AND POWER COMPANY, a Corporation, Appellee.

1. CONSTITUTIONAL LAW—CORPORATIONS—PUBLIC SERVICE CORPORATIONS—REGULATION.—Laws of 1912 (Sp. Sess.), chapter 52, section 7, requiring public service corporations to sell water, electrical energy, or illuminating gas by meter measurement, and prohibiting them from charging for a greater amount than actually furnished, conflicts with Constitution, article 15, section 3, giving the Corporation Commission full power to fix the classifications, rates and charges of public service corporations, except that cities and towns may be authorized by the legislature to exercise supervision within their respective limits, since the constitutional power given the commission is not only full, but exclusive, except in the one instance wherein the legislature is authorized to transfer such power to cities and towns, it excludes interference by the legislature in every other way.

2. CONSTITUTIONAL LAW — CONSTITUTION — CONSTRUCTION. —Since Constitution, article 15, section 6, expressly authorizes the legislature to enlarge the powers and extend the duties of the Corporation Commission, but nowhere authorizes it to restrict or limit its powers, it thereby impliedly forbids the legislature from exercising any of the powers vested in the commission.

3. CORPORATIONS — CORPORATION COMMISSION — POWERS. — Constitution, article 15, section 8, authorizing the legislature to exercise its authority in the formulation of regulations to govern the interchange by transportation companies of cars, property, and passengers, and section 9, containing a similar provision in regard to telegraph and telephone companies, do not limit the full power given by section 3 to the Corporation Commission to fix rates, charges and classifications for public utilities.

4. CORPORATIONS — CORPORATION COMMISSION — POWERS.—Constitution, article 15, section 3, vests the Corporation Commission with full power, with the command to exercise it: (1) To prescribe just and reasonable classifications to be used; (2) just and reasonable rates and charges to be made and collected; (3) reasonable rules, regulations and orders by which public service corporations shall be governed in the transactions of business within the state.

5. CORPORATIONS—CORPORATION COMMISSION—POWERS.—The functions of the Corporation Commission are neither legislative, executive nor judicial, but its duties and powers pervade them all, and it is in fact, another department of government; and, where it is given exclusive power, it is supreme.

[As to right of city which has fixed rates for public service corporations to object to change thereof by state or public commission, see note in Ann. Cas. 1913A, 89.]

APPEAL from a judgment of the Superior Court of the County of Pima. W. F. Cooper, Judge. Affirmed.

The facts are stated in the opinion.

Mr. G. P. Bullard, Attorney General, and Mr. Geo. O. Hilzinger, County Attorney, for Appellant.

Mr. S. L. Kingan and Mr. John M. Olin, for Appellee.

ROSS, J.—The appellee is charged by the information with unlawfully charging and collecting from Alfredo Durazo one dollar for illuminating gas for lighting purposes, whereas the gas actually furnished him was of the value of forty cents. To the information the appellee filed a demurrer, on the

ground that it failed to state facts sufficient to constitute a crime or offense under the laws of Arizona, or at all. The demurrer was sustained, and the state prosecutes this appeal on questions of law only.

The statute law applicable to the case is found in chapter 52, Laws First Special Session of Arizona of 1912, and section 7 thereof, which reads: "Sec. 7. It shall be unlawful for any person, firm, or corporation, to sell and deliver, charge and collect for, or pay for, water, electrical energy, or illuminating gas, used or to be used for lighting, heating, or other commercial or domestic purposes, except by meter measurement, if the consumer shall request that the same be sold by meter measurement; or to charge and collect for, or pay for, a greater amount of such water, electrical energy, or illuminating gas, than actually furnished during the period for which the charge was made." The question is, May a public service corporation establish and collect a minimum rate, notwithstanding this legislative expression to the contrary? It is the contention of appellee that this legislative act is repugnant to the Constitution of Arizona, and void in so far as it attempts to fix rates to be charged for the products named.

The provisions of the Constitution relied on as forbidding this piece of legislation are found in article 15 thereof.

Section 1 creates the Corporation Commission and provides for the election of its members and their tenure of office.

Public service corporations are defined by section 2, which reads as follows: "All corporations other than municipal engaged in carrying persons or property for hire; or in furnishing gas, oil, or electricity for light, fuel, or power; or in furnishing water for irrigation, fire protection, or other public purposes; or in furnishing, for profit, hot or cold air or steam for heating or cooling purposes; or in transmitting messages or furnishing public telegraph or telephone service, and all corporations other than municipal, operating as common carriers, shall be deemed public service corporations."

Section 3 defines the powers of the Corporation Commission, and reads: "The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and make reasonable

rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state, and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein, including the regulation of rates and charges to be made and collected by such corporations; provided further, that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said Corporation Commission, may from time to time be amended or repealed by such commission.''

Section 6 provides that: ''The law-making power may enlarge the powers and extend the duties of the Corporation Commission, and may prescribe rules and regulations to govern proceedings instituted by and before it; but, until such rules and regulations are provided by law, the commission may make rules and regulations to govern proceedings.''

Considering section 3, it will be noticed that the Corporation Commission is given full power to prescribe just and reasonable classifications and just and reasonable rates and charges to be made and collected by public service corporations. ''Full power,'' taken alone as the measure of the commission's jurisdiction, means a complete and perfect or plenary power over the subject matters named, but it does not necessarily mean exclusive power. The ''full power'' granted the commission extends to the fixing of classifications and rates of all public utilities operating in the state, whether in incorporated cities or not. In the absence of legislation as contemplated by the proviso in section 3, the ''full power'' is a general grant or investiture of plenary power in the commission to prescribe classifications and fix rates and charges for all public service corporations in the state. By the proviso this full power and jurisdiction of the Corporation Commission to prescribe classifications and fix rates and charges in incorporated cities and towns may be transferred to such municipal corporations, if ''authorized by law.''

That is to say, the legislature may, in one case, exercise its power to restrict or limit the "full power" and jurisdiction of the commission to prescribe classifications and fix rates and charges of public service corporations, and that case is particularly and definitely pointed out. The Constitution itself having thus named the one instance that the commission may be shorn of its "full power" to act on rates and charges and classifications, and reposed the authority in the legislature to divest that power in *the one instance,* the inevitable conclusion is that the legislature could interfere with, or limit the commission's powers in no other instance.

"The expression of one thing is the exclusion of another." "Broom, in his Legal Maxims, says that no maxim of the law is of more general and uniform application; and it is never more applicable than in the construction and interpretation of statutes. Whenever a statute limits a thing to be done in a particular form, it necessarily includes in itself a negative, viz., that the thing shall not be done otherwise." 19 Cyc. 23.

We think this maxim has a special application here. If the Constitution had intended that the legislative department should have unrestricted power over the corporation commission, it has failed to so indicate, but, on the contrary, has definitely limited and restricted its power to take from the commission the prescribing of classifications and fixing rates and charges in incorporated cities and towns only.

It was said by Justice FIELD, in *Georgia Banking Co.* v. *Smith,* 128 U. S. 174, 181, 32 L. Ed. 37, 9 Sup. Ct. Rep. 47, 49, that "the general purpose of a proviso, as is well known, is to except the clause covered by it from the general provisions of a statute, or from some provisions of it, or to qualify the operation of the statute in some particular." The power granted to the corporation commisson by section 3 of the Constitution to supervise, regulate, and control public service corporations extends to and covers all such corporations doing business in the state. However, this power may be given over to incorporated cities and towns by proper legislative action, either by the legislature or the people. If the law-making power of the state can transfer this power of regulation and control from the corporation commission to cities and towns, only by virtue of the direct grant of authority to do so, as

contained in the proviso, it would seem to follow that the legislature is powerless to prescribe classifications, rates, charges, rules, regulations and orders by which public service corporations shall be governed. And if the proviso is not a restriction upon the law-making body, why was it inserted in the Constitution? If the law-making body of the state has the power of supervision, regulation and control, including the fixing of rates and charges, over public utilities, as is contended by appellant, then the proviso serves no purpose whatever. It is clear without the proviso the grant to the corporation commission is full and complete power to act in the premises, and the force and effect of the proviso, when vitalized by legislation, is to transfer the power to incorporated cities and towns to regulate, supervise and control public service corporations doing business therein, including the fixing of rates and charges to be made and collected. We think the proviso strengthens the general grant of power to the corporation commission and, in effect, makes its authority exclusive and supreme, except in the matter of home rule to cities and towns.

To this point we have directed our discussion to the first proviso of section 3, *supra.* The second proviso of that section is "that classifications, rates, rules, regulations, orders and forms or systems prescribed or made by said corporation commission may from time to time be amended or repealed by such commission." The commission shall not only have the full power to act in the premises, but, having acted, it only may amend and repeal its action. As is hereafter shown, we think this must be true, or else there would exist no paramount authority over the matter of regulating and supervising public service corporations. It is a necessary rule of construction in order to avoid a conflict of authority and preserve uniformity of regulation and supervision.

The maxim "*Expressio unius est exclusio alterius*" bears with equal force upon section 6 of the Constitution above quoted. By it "the law-making power may *enlarge the powers* and *extend the duties* of the corporation commission," but nowhere in that instrument is the legislature empowered to restrict or limit its powers except in the one instance above discussed and in the matter of free or reduced transportation. The Constitution, having in express terms authorized the legis-

lature to enlarge the powers and extend the duties of the commission, impliedly forbids the legislature from exercising any of the powers vested in the commission (such as fixing rates and charges) that would have the effect of lessening or decreasing the commission's powers. For, granting the power in the legislature to prescribe classifications and fix rates and charges to be made and collected by public service corporations for services rendered, it would carry with it *ex necessitate* the power to supplant all the functions of the commission, for, the power being conceded, it would be unlimited. Thus we might have a constitutional body in name only. Or, if the commission may and shall prescribe classifications and fix rates and charges, and the legislature may do the same thing, public service corporations would be placed in the embarrassing dilemma of trying to follow the classifications, rates and charges of two supervising authorities, an impossibility where the classifications, rates and charges differ. In the latter case conflict of authority and power would exist, and confusion and uncertainty would result in the administration of the law. In the former case the corporation commission would become a useless body, if the legislature chose to make it so by exercising its powers.

Article 15 of our Constitution is unique in that no other state has given its commission, by whatever name called, so extensive power and jurisdiction. While it seems to be somewhat patterned after the Virginia Constitution of 1902 (article 12, sections 155, 156 [Code 1904, pp. ccl, ccli]) and the Oklahoma Constitution (article 9, sections 15–18), its powers of supervision, regulation and control extend practically to all public utilities, whereas the Constitutions of the latter states grant this power over transportation and transmission companies only. The Constitutions of Virginia and Oklahoma provide that "the authority of the commission (subject to review on appeal) to prescribe rates, charges and classifications of traffic, for transportation and transmission companies, shall be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the legislature to legislate thereon by general laws." This provision in those Constitutions clearly reserves to the legislative department the power to regulate and fix rates, charges

and classifications to be made and collected by transportation and transmission companies, and, in the absence of action by the commission, such rates, charges and classifications would be the law. But if both the commission and the legislature should fix rates, charges and classifications, then the legislative act would have to give place to the action of the commission. This is not true of the provisions of the Arizona Constitution, for it fails to provide a paramount authority in the legislature or in the commission, and yet there should be such paramount or exclusive authority in the one or the other if harmony and symmetry are desired and had in the supervision, regulation and control of public utilities as to rates, charges and classifications.

"The corporation commission shall have full power to, and shall . . . make reasonable rules, regulations, and orders, by which such corporations *shall be governed in the* transaction of business within the state. . . ." This language in section 3, *supra,* is not merely directory, but mandatory, and, except where the Constitution may in other places give the power to the legislature to prescribe rules, regulations and orders by which corporations *shall be governed,* vests the exclusive power to do so in the commission. Where the Constitution has said that public service corporations shall be governed by the Corporation Commission in a given respect, it is the last, the highest, and controlling fundamental law as to that matter. No act of the legislature, for it must proceed in accordance with the terms of the Constitution, can exercise the power, or place it elsewhere.

Limitations upon the power of the legislature to legislate, concerning the Corporation Commission and its duties and powers, are found in section 6, *supra,* wherein it is provided that the law-making body may enlarge its powers and extend its duties and prescribe rules and regulations to govern proceedings instituted by and before it. If the framers of the Constitution had intended that the legislature could do other than "enlarge its powers and extend its duties," how easy it would have been to have inserted in this section that power by appropriate words, such as the "law-making power may enlarge, limit or restrict the powers and extend or limit and restrict the duties of the commission." The words actually

used in this connection included in themselves the negative, "that the thing shall not be done otherwise."

It was clearly the policy of the framers of the Constitution, and the people in adopting it, to take the powers of supervision, regulation and control of public utilities from the legislative branch and vest them in the Corporation Commission, whose powers and jurisdiction are *sui generis,* and whose functions in the aggregate necessarily in their very nature comprehend those which ordinarily are separately vested in the legislative, judicial, and executive departments of government, respectively. From this fixed, definite and certain policy, as found in the Constitution, of imposing such powers in the commission, there arises an inhibition against their exercise by the legislature as insuperable as if expressly prohibited to it.

BEATTY, Chief Justice, in *State* v. *Hallock,* 14 Nev. 202, 205, 33 Am. Rep. 559, 561, in discussing constitutional policy and prohibition by implication, said: "It is true that the Constitution does not expressly inhibit the power which the legislature has assumed to exercise, but an express inhibition is not necessary. The affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the legislature to establish a different policy. 'Every positive direction contains an implication against anything contrary to it which would frustrate or disappoint the purpose of that provision. The frame of the government, the grant of legislative power itself, the organization of the executive authority, the erection of the principal courts of justice, create implied limitations upon the law-making authority as strong as though a negative was expressed in each instance.' *People* v. *Draper,* 15 N. Y. 544. The presumption is always that the positive provisions of a Constitution are mandatory and not merely directory (Cooley's Constitutional Limitations, 78, 79), and there is nothing to overthrow this presumption with respect to the provisions under discussion."

Section 8 provides that the legislature may exercise its authority in the formulation of regulations to govern the interchange, by transportation companies with each other, of cars, property, and passengers.

Section 9 has a similar provision in regard to telegraph and telephone lines and their relation to other companies engaged in the same character of business.

Section 12 provides that all charges for services by public service corporations shall be just and reasonable and not discriminatory, except that the granting of free and reduced rate transportation "may be authorized by law or by the Corporation Commission" to certain designated classes of persons.

Sections 8 and 9 do not, in the least, limit the "full power" of the commission to fix rates and charges and classifications for public utilities, as they only undertake definitely to name instances in which the action and conduct of such corporations must conform to "such rules and regulations as shall be prescribed by the corporation commission, or by law," and the exception in section 12 emphasizes the general rule of exclusive power in the commission to fix rates, charges and classifications.

In order that the Corporation Commission might act intelligently, justly and fairly between the public service corporations doing business in the state and the general public, section 14 was written into the Constitution, which section reads: "The Corporation Commission shall, to aid it in the proper discharge of its duties, ascertain the fair value of the property within the state of every public service corporation doing business therein; and every public service corporation doing business within the state shall furnish to the commission all evidence in its possession, and all assistance in its power, requested by the commission in aid of the determination of the value of the property within the state of such public service corporation." The "fair value of the property" of public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges, and to that end the public service corporations are required to furnish the commission all the assistance in their power.

Section 16 provides for the imposition of a fine of not less than $100, and not more than $5,000 for each violation of any rule, regulation, order, or decision of the Corporation

Commission, to be recovered before any court of competent jurisdiction; and section 19 empowers and authorizes the commission to enforce its rules, regulations and orders by the imposition of such fines as it deems just within the limitations of section 16 of article 15.

The Corporation Commission, therefore, has been vested by section 3, *supra,* with full power, with the command to exercise it: (1) To prescribe just and reasonable classifications to be used; (2) just and reasonable rates and charges to be made and collected; (3) reasonable rules, regulations and orders by which public service corporations *"shall be governed in the transaction of business within the state."*

Section 32, article 2, is: "The provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." The language of section 3, *supra,* is, in effect, that public service corporations *"shall be governed* in the transaction of business within the state," by the classifications, rates, charges, rules, regulations and orders of the Corporation Commission, and in these particularly named matters public utilities operating in the state cannot be *governed* by legislative act, except in so far as the Constitution itself has authorized the law-making body to modify the grant of power to the commission.

We think we have fully shown that the Constitution has, in no place, except in the provision for home rule to incorporated cities and towns, and free or reduced transportation to certain enumerated classes, limited, restricted, or modified the "full power" granted the commission by section 3.

Section 5 of article 15 provides, that "the Corporation Commission shall have the sole power to issue certificates of incorporation to companies organizing under the laws of this state, and to issue licenses to foreign corporations to do business in this state, as may be prescribed by law," but this grant of exclusive power to the commission is not more imperative or mandatory than the language in section 3, which provides that the commission shall have full power to and *shall fix rates,* charges, classifications, rules and regulations by which public service corporations *"shall be governed in the transaction of business within the state."* This "sole power" of life over domestic corporations, and "sole power" to qualify foreign corporations to do business in this state,.

given to our commission, are not to be found in the Constitution of any other state.

Article 3 of the Arizona Constitution reads: "The powers of the government of the state of Arizona shall be divided into three separate departments, the legislative, the executive, and the judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others." The functions of the Corporation Commission are not confined to any of the three departments named, but its duties and powers pervade them all; hence the provision "except as provided in this Constitution, such departments shall be separate and distinct."

In *St. Louis & S. F. R. Co.* v. *Williams,* 25 Okl. 662, 665, 107 Pac. 428, 430, the supreme court of Oklahoma has said of its Corporation Commission that, it "is invested with extraordinary powers, being authorized to exercise, not only legislative, but also executive, administrative, and judicial, powers." *Calumet Service Co.* v. *City of Chilton,* 148 Wis. 334, 135 N. W. 131, 143.

Whatever the reasons and influences that may have prompted the framers of the Constitution to endow the Corporation Commission with such extraordinary and unusual powers, it is a well-known fact that there has long existed a deep-rooted dissatisfaction with the results obtained through the legislatures of the country in their efforts to adjust and regulate rates and classifications between the general public and public service corporations. While the power to control and regulate those matters by the law-making body has been frequently upheld, the lack of full information on the part of the legislator, and inadequacy of time and means of investigation, have tended to foster litigation, with the result of suspending and often of defeating the object aimed at, rather than to secure just and reasonable classifications, rates, charges and regulations. The unwisdom and impracticability of imposing upon the courts, in the first instance, this kind of litigation has frequently been adverted to by the courts. One court used this language: "It is utterly impossible for a court to hear all cases similar to this, which requires from one to three months to hear the evidence, after the issues are formed. If this court were to do nothing else, it could not personally

XV Ariz.—20

hear all such cases. . . . Some of the states, like New York, Massachusetts and Wisconsin, have state commissions of competent men, who give public hearings, and who do nothing behind doors, nor in secrecy—a commission with no member interested as a taxpayer of the city and with no member subject to influences other than the ascertaining of the truth and the facts. Rates are thus fixed with which most fairminded people are ready to acquiesce. It is strange that we have no such legislation and no such commission in Iowa." *Des Moines Water Co.* v. *City of Des Moines* (C. C.), 192 Fed. 193, 195. The same court in *Des Moines Gas Co.* v. *City of Des Moines* (D. C.), 199 Fed. 204, 205, again said: "Much of this kind of litigation, and practically all of the expense, would be avoided, if Iowa, like so many of the other, including some neighboring, states, had an impartial and nonresident commission or tribunal, with power to fix these rates at a public hearing, and all interested parties present, with the tribunal selecting its own engineers, auditors, and accountants."

The framers of the Constitution were fully informed as to the chaotic conditions existing. They knew the evil, and sought to correct it in the fundamental law of the state by constituting the Corporation Commission a body empowered and authorized by that instrument to exercise not only legislative but the judicial, administrative and executive functions of the government. While it is not so named, it is, in fact, another department of government, with powers and duties as well defined as any branch of the government, and where it is given exclusive power it is supreme. Its exclusive field may not be invaded by either the courts, the legislative or executive.

In matters of controversy and dispute between public service corporations and their patrons the commission is fully equipped for thorough investigation. It has the power at its pleasure to employ such officers, experts, engineers, statisticians, accountants, inspectors, clerks and employees as it may deem necessary in the performance of its duties and the exercise of its powers. Laws 1st Sess. 1912, sec. 6, c. 90. Its findings of fact are made conclusive evidence of the facts therein stated in any action or proceeding or hearing before

the commission or any court between the same parties, involving the same subject matter.   Id., sec. 70.

The facility afforded the commission to probe disputes involving the classifications, rates, charges, rules and regulations of public utilities ought to result in fair and reasonable adjustments of such controversies, but should either the consumer or the producer be dissatisfied, its labors in gathering the testimony will greatly aid the courts, if appealed to.

The office of the commission is always open to receive and investigate complaints, except on legal holidays and nonjudicial days.

We are of the opinion that the people, by their Constitution, have said, in plain and unequivocal language, that "the Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be collected, by public service corporations within the state for services rendered therein and (shall) make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state," and that the power therein granted to the commission is exclusive, and not to be exercised by the legislature.   For if "such corporations" "*shall be governed* in the transaction of business," by the commission in the enumerated matters, there is an implied exclusion of power in any other body or department to prescribe classifications, rates, charges, rules, regulations or orders.

As above said, no other state in the Union has placed such extraordinary power in its Corporation Commission but that is no reason for rejecting or repudiating, by construction or otherwise, the power and authority given this body by our Constitution.   It is to be remembered that the framers, and the people who adopted it, designed that our Constitution abandon the beaten path of precedents in Constitution making, and handle modern problems and conditions by advanced and up-to-date methods and formulas.   The supervision and control of public utilities has ever been, and probably always will be, one of the most vexatious as well as vital questions of government.   All persons agree that the capital invested in public service should receive reasonable remuneration, and that the services rendered should be efficient and

practicable and to all patrons upon equal terms and condi-
tions. With a full knowledge that these things had not been
accomplished under the laws heretofore existing in this and
other jurisdictions, the people in their fundamental law cre-
ated the Corporation Commission, and clothed it with full
power to investigate, hear and determine disputes and con-
troversies between public utility companies and the general
public. This was done primarily for the interest of the con-
sumer. If he is dissatisfied with the rates and charges ex-
acted of him by his public service corporation, he may file
his complaint with the commission and secure an investigation
and determination of the wrong charged. With trained,
capable and conscientious commissioners, it is fair to assume
that he will be granted a speedy hearing and a reasonable
adjustment of his complaint.

While the legislature had no power under the Constitution
to do what it undertook to do in section 7 of chapter 52, the
Corporation Commission not only has the power to do it, but
is afforded every facility for its intelligent execution. The
commission, upon application or upon its own motion, notice
and hearing, possesses the power to require illuminating gas
to be sold by meter measurement, and may forbid the gas com-
pany from charging and collecting for a greater amount of
gas "than actually furnished during the period for which the
charge is made," if the facts in the case show that such charge
is just and reasonable. Indeed, if the commission's findings
of fact, in a given case, would support such a decision, we can
see no reason why the very language of section 7 might not
be used as the expression of its judgment. The commission
is not bound to recognize and prescribe minimum rates, unless
the situation requires it, in order that the rates be just and
reasonable.

Judgment sustaining demurrer is affirmed.

FRANKLIN, C. J., concurs.

CUNNINGHAM, J., Dissenting.—The respondent was in-
formed against, charging that it had furnished, as a public
service corporation, to one A. Durazo 200 cubic feet of illumi-
nating gas, for which it had charged and collected at a rate
charge for 500 cubic feet of gas, thereby charging and collect-

ing as for 500 cubic feet, when in fact only 200 cubic feet were actually furnished, and said 200 cubic feet were worth forty cents. The information was based upon section 7 of chapter 52 of the First Special Session of the First State Legislature, approved June 19, 1912, page 147 of said laws. The statute is as follows: "It shall be unlawful for any person, firm, or corporation, to sell and deliver, charge and collect for, or pay for, water, electrical energy or illuminating gas, used or to be used for lighting, heating, or other commercial or domestic purposes, except by meter measurement, if the consumer shall request that the same be sold by meter measurement; or to charge and collect for, or pay for, a greater amount of such water, electrical energy, or illuminating gas, than actually furnished during the period for which the charge was made; . . . " Section 11 of said chapter 52 prescribes the penalty. To the information the defendant corporation filed a demurrer upon the grounds that said section 7 is in conflict with the Constitution, article 15, and void. The demurrer was sustained by the court, and the information was dismissed. The state has appealed and assigned these rulings as error.

The question raised is whether the statute in question conflicts with the Constitution, or, in other words, does the Constitution prohibit the legislature from enacting laws regulating the rates and charges that a public service corporation may enforce for its services rendered to its customers using its product? It is contended by respondent that the Constitution, article 15, has invested the Corporation Commission with the exclusive power to prescribe rates and charges for the government of all public service corporations. Section 3 of article 15 of the Constitution provides that: "The Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state. . . . " This language is susceptible of no interpretation. The Corporation Commission is given all the powers required to prescribe "just and reasonable classifications to be used," and to prescribe "just

and reasonable rates and charges to be made and collected"
by public service corporations, and the Constitution com-
mands that the Corporation Commission "shall" prescribe
such just and reasonable classifications and rates and charges.
Thus far the powers and duties of the Corporation Commis-
sion are clear.

Section 2 of article 14 of the Constitution requires corpora-
tions to be formed under general laws, and continues: "Laws
relating to corporations may be altered, amended, or repealed
at any time, and all corporations doing business in this state
may, as to such business, be regulated, limited, and restrained
by law." No one will deny the legislative power the right
to enact laws regulating, limiting, or restraining the business
of corporations in general. Public service corporations in
existence at the time of the admission of this state into the
Union are denied the benefits of any future legislation, except
on condition of complete acceptance of all provisions of the
Constitution applicable to public service corporations, by sec-
tion 15 of article 15 of the Constitution, clearly indicating a
legislative intent of the framers of the Constitution and of
the people adopting it to retain some power in the legislative
department of the state to legislate relative to public service
corporations. The express limitations upon the power of the
legislative authority of the state are prescribed by article 4,
subdivision 2 of the Constitution, and I fail to find therein
any express prohibition upon the legislature from enacting
any law limiting, regulating or restraining the business of
public service corporations. Such subjects are proper sub-
jects of legislation. If this proposition is correct, and I am
confident that it is correct, then no conflict exists between the
statute and the constitutional provision empowering and com-
manding the Corporation Commission to make classifications,
prescribe rates and charges, and otherwise regulate the busi-
ness of public service corporations, simply because the Cor-
poration Commission is likewise invested with the same power
in that respect as the legislature possesses.

It is clear that a conflict of laws affecting the business of
such corporations may arise, in which case article 15 of the
Constitution would play a most important part, and would
be decisive. I have reference to a state of facts where the
Corporation Commission has legally and regularly exercised

its powers upon the subject by fixing the rates and charges applicable to a given public service corporation. In which case the orders of the Corporation Commission become the fixed law for that corporation, a violation of which subjects the corporation to a prescribed penalty.

Where the Corporation Commission has legally prescribed classifications, regulations and rates and charges for the government of any specific public service corporation, such legal orders necessarily conflict with the general law—section 7 of chapter 52, *supra.* In case of such conflict, by the terms of the constitutional provision as to such corporation, the orders of the Corporation Commission must control, and the general law becomes inoperative in such instance. Until the Corporation Commission has by its order fixed the duties of a given public service corporation in the matters of its rates and charges, such corporation is not liable to the penalties prescribed by section 16 and section 19 of article 15 of the Constitution. Until the rules, regulations, orders or decisions have been prescribed, entered and made by the Corporation Commission, no penalty for a violation thereof is in existence. Until such rules, regulations, orders and decisions are in existence section 7 of chapter 52, Laws of the First Special Session, applies. If any public service corporation does not wish to incur the penalty prescribed by said section 7 of chapter 52, *supra,* then it must become active in placing itself within the prescribed conditions, and have its rates and charges prescribed by the order of the Corporation Commission; otherwise the general law applies to its business.

The defendant admits for the purpose of the demurrer that it did charge and collect from A. Durazo one dollar for furnishing him with gas, when the gas actually furnished to him was worth not more than forty cents. If the defendant corporation, at the time charged in the information, was acting in accordance with any order made by the Corporation Commission, fixing and prescribing rates and charges to be made by such corporation for such service, then no public offense was charged as to this appellee. Such condition does not appear. We must presume such condition did not exist, otherwise the appellee corporation would have urged it by plea in abatement, or other appropriate manner, bringing the fact before the court. The demurrer only raises questions appearing upon

the face of the pleading attacked, and such condition does not so appear.

The order sustaining the demurrer was error, for which the judgment should be reversed and the cause remanded.