417 P.2d 725

**Philip E. TOVREA, Jr., Appellant,**

v.

**SAN XAVIER ROCK AND SAND CO.,**
**an Arizona corporation, Appellee.**

**No. 2 CA–CIV 245.**

Court of Appeals of Arizona.

Sept. 2, 1966.

Rehearing Denied Oct. 4, 1966.

McKesson, Renaud, Cook & Miller, by Joseph B. Miller, Theodore A. Julian, Phoenix, for appellant.

Holesapple, Conner, Jones, McFall & Johnson, by Clifford R. McFall, Tucson, for appellee.

HATHAWAY, Judge.

Philip E. Tovrea, Jr., brought a contract action against the appellee, San Xavier Rock and Sand Company, an Arizona corporation, in superior court in Pima County. Appellee moved to dismiss on the grounds that the complaint failed to state a claim. The motion was granted, hence this appeal.

San Xavier Rock and Sand Company, hereinafter called contractor, was awarded a contract with the State of Arizona for the construction of a portion of the Casa Grande-Tucson highway extending south from Congress Street in Tucson to a point 1,500 feet south from 22d Street. The contractor entered into a subcontract with Steel and Pipe Supply of Arizona, Inc., for the performance of certain construction on said highway consisting of the preparation of borrow pits, by stripping and clearing over burden therefrom and removing other materials, to enable the said subcontractor to extract therefrom and deliver to the jobsite approximately 1,043,330 tons of borrow material to be used in the construction. The subcontractor also contracted to build and maintain haul roads, to do all other work necessary to obtain and deliver the borrow materials needed, and to clean up all of the borrow pits after completion of the job. The work was to be started on October, 1960 and was to be completed by March 1:, 1961. The Steel and Pipe Supply of Arizona, Inc. assigned the subcontract to the appellant, Philip E. Tovrea, Jr.

On January 28, 1964, Tovrea commenced this action, which is the subject matter of this appeal, in superior court of Pima County, Arizona, as the assignee of the subcontractor, Steel and Pipe Supply of Arizona, Inc. In his complaint, Tovrea alleged that the contractor had breached said subcontract by delaying the performance of the subcontract and claimed damages for such alleged delay in the sum of $25,072.23.

The contractor moved to dismiss the action on the ground that it failed to state a claim upon which relief could be granted, for the reason that the complaint failed to allege that the said subcontractor was duly licensed as required under A.R.S. § 32–1153, which provides:

"No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose."

The motion was granted with leave to amend. Thereafter an amended complaint, substantially identical with the original, was filed. The amended complaint alleged additionally that the plaintiff-assignor, Steel and Pipe Supply of Arizona, Inc., was the holder of a certificate of convenience and necessity issued by the Arizona Corporation Commission and was authorized thereunder to operate as a common motor carrier for the transportation of road materials, supplies and equipment within the State of Arizona. The contractor again moved to dismiss on the same basis as the prior motion, and on the additional ground that the certificate from the corporation commission was not a substitute for a contractor's license and did not satisfy the allegation that the said subcontractor was duly licensed. The court entered judgment dismissing the

amended complaint from which appellant appeals.

We must determine whether the work that was to be performed by the subcontractor fell within the scope of A.R.S. § 32–1101. If so, was the subcontractor relieved of the requirement of obtaining a license from the Registrar of Contractors by virtue of the certificate of convenience and necessity which it held as a common carrier for the transportation of property over the public highways of Arizona?

The definition of a contractor, set forth in A.R.S. § 32–1101, includes:

"* * * a person * * * who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith. The term contractor includes subcontractors and specialty contractors."

In his amended complaint, the appellant alleged that the agreement required the subcontractor to:

" 'Load and haul approximately 1,043,330 tons of Borrow to designated locations on Jobsite. To include all stripping and clearing of Pits, cleanup of Pits, Construction and maintenance of haul roads or any other work required to deliver the Borrow materials to the Jobsite.' That said agreement further required that Steel and Pipe start the aforementioned work on or before October 17, 1960, and complete same by March 15, 1961."

■ Appellant's contractual undertaking, as is apparent from the foregoing allegations, lies within the activities covered in A.R.S. § 32–1101. The contract required road construction, excavation, and other project development. In addition, the loading and hauling of a designated tonnage of borrow, compensable at a specified contract rate, was required.

The appellant argues that even if his activities came within those requiring a contractor's license by statute, such a license is not necessary in this case because the corporation commission exercises exclusive control over the activities of a certificated common carrier, citing Article 15, Section 3 of the Constitution of the State of Arizona, A.R.S. and State v. Tucson Gas, Electric Light & Power Co., 15 Ariz. 294, 138 P. 781 (1914). The cited constitutional section provides in part:

"The Corporation Commission shall have full power to, and shall * * * make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the State * * *."

Referring to this section, the Arizona Supreme Court in State v. Tucson Gas, Electric Light & Power Co., supra, said:

"This language in section 3, supra, is not merely directory, but mandatory, and, except where the Constitution may in other places give the power to the Legislature to prescribe rules, regulations, and orders by which corporations *shall be governed,* vests the exclusive power to do so in the Commission. Where the Constitution has said that public service corporations shall be governed by the Corporation Commission in a given respect, it is the last, the highest, and controlling fundamental law as to that matter. No act of the Legislature, for it must proceed in accordance with the terms of the Constitution, can exercise the power, or place it elsewhere."

■ We are in complete agreement with the proposition that the corporation commission is vested with exclusive powers of supervision, regulation, and control of public utilities. However, when such a utility ventures forth mantled in its certificate of convenience and necessity and undertakes activities beyond the realm of its

certificate, it must carry the same credentials required of any other traveler. A certificate is not a carte blanche passport into every desired endeavor. The activities of a common carrier and a contractor are not identical. Before a common carrier takes up contracting, he must secure a license as any other contractor. The licensing of contractors is designed to protect the public from the unqualified entrepreneur. Before contracting, the appellant must qualify as anyone else.

Judgment affirmed.

KRUCKER, C. J., and LEE GARRETT, Superior Court Judge, concur.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge LEE GARRETT was called to sit in his stead and participate in the determination of this decision.