432 P.2d 154

James E. NEWCOMB and Wanda Newcomb, husband and wife, Appellants,

v.

Erling SMEDAL and Emma Smedal, husband and wife, and Raymond Rose and Jane Doe Rose, husband and wife, Appellees.

2 CA–CIV 277.

Court of Appeals of Arizona.

Oct. 2, 1967.

Soble & Meehan, by George T. Meehan, Tucson, for appellants.

Healy, Laubscher & Dickerson, by Vernon F. Dickerson, Tucson, for appellees.

HATHAWAY, Chief Judge.

Plaintiffs, appellants, filed an action in superior court "for debt arising out of an oral contract" for the furnishing of labor and materials for the construction of the defendant's, Dr. Rose, office suite. After hearing the plaintiffs' case, the lower court sitting without a jury granted a motion for summary judgment for the defendants Smedal and the plaintiffs do. not question this on appeal. The court then heard the Rose case and entered the following judgment:

"1. It appears to the court that under the facts of this case and the Arizona Statutes, the plaintiffs were acting as contractors and were unlicensed, and therefore the action is prohibited by A.R. S. § 32–1153,[1] and therefore the plaintiffs' complaint be and the same hereby is dismissed with prejudice.

"2. That the defendants Rose take nothing on their counterclaim against the plaintiffs."

Plaintiffs moved for a new trial and upon this motion being denied filed this appeal.

Viewing the facts in the light most favorable to support the judgment, we find them to be as follows. The plaintiffs and the defendants Rose were very good friends prior to the agreement out of which this litigation arose. On the evening of December 27, 1963 the Newcombs and the Roses gathered at the Rose home for dinner. There ensued a discussion about Dr. Rose's proposed office. He told Mr. Newcomb that only the shell of the building was now present and that he would have to build the inside of the office to make it suitable for occupancy. Being cognizant that Mr. Newcomb had built homes in the past and that he was presently in the process of building a home, Dr. Rose asked Mr. Newcomb how much it would cost to complete the inside of his office. This began a very detailed conversation which lasted until two o'clock the following morning.

The gist of this discussion between the four parties consisted of a very thorough analysis of what exactly Dr. Rose would need to complete the office. During the conversation Mr. Newcomb kept a scratch pad available and jotted down all the items needed and their approximate cost. Various men that Mr. Newcomb would have to employ for the job were also discussed as were their wages. Throughout the night there was no discussion of either of the plaintiffs' wages (both plaintiffs worked on the job).

At the end of the night Mr. Newcomb came up with an approximation of the cost of the building at $8,750. Mrs. Newcomb verified this and told Dr. Rose that even if he "got real fancy" the total cost could not exceed $9,000. Dr. Rose testified that he was under the general impression that Mr. Newcomb was going to do the job for this total price and that his profit would be taken therefrom. There was an agreement that Mr. Newcomb should start the job, which would take about three weeks according to his estimation, on January 3, 1964.

Mr. Newcomb testified that at the time of and prior to this agreement he was not a licensed contractor in the State of Arizona. Nonetheless, he hired all employees working on the job, set the wages for such employees, subcontracted the air conditioning and plastering of the office, kept all the records of the employees, had complete control over the employees, paid all the em-

---

1. A.R.S. § 32–1153:
   "No contractor shall act as agent or commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose."

ployees from his own personal checking account withholding income tax and social security taxes, furnished all the tools necessary on the job except those that the employees brought with them, furnished his own industrial commission policy and paid the premiums thereon, and generally determined the total aspect of the job at all stages. Newcomb charged to his own personal accounts all the materials used on the job and received therefore a "contractor's discount." He paid the sales taxes due on the materials and they were listed on the tax form under the contracting classifications. Newcomb either personally performed or directed all of the work on the job including carpentry, electrical, flooring, tiling, plumbing, and painting.

Dr. Rose was not a builder and was inexperienced in construction. He did various odd jobs on and around the office during the construction but did these only at the direction of Newcomb.

Newcomb personally kept all records of the job including invoices and time books. Up to the time of Newcomb's termination by Dr. Rose he had been paid by the doctor in two separate draws of $4,000 and $5,000. On March 16 the job had not yet been completed and Dr. Rose, being very upset about the length of time consumed, asked Mr. Newcomb to leave the job.

Subsequently, Newcomb submitted a total bill to Dr. Rose for over $16,000, such bill not accounting for the $9,000 previously paid to Newcomb by the doctor. Upon Dr. Rose's refusal to pay the difference this action was instituted.

The plaintiffs base their case on the claim that they were "employees" of Dr. Rose and therefore were entitled to all monies expended for materials *plus* their alleged wages. As an affirmative defense Dr. Rose claimed that the plaintiffs were not entitled to bring this action as Mr. Newcomb was an unlicensed contractor and therefore prohibited by A.R.S. § 32–1153.

The issues presented by this case are:

1. Was sufficient evidence presented upon which the trial court could base its judgment that the plaintiffs were acting as contractors within the provisions of A.R.S. § 32–1101?

2. Are the defendants entitled to attorney's fees resulting from this appeal because the appeal is frivolous?

A.R.S. § 32–1101 defines a "contractor" as a person:

"* * * who, for either a fixed sum, price, fee, percentage, bonus or other compensation other than actual wages, undertakes to * * * construct * * * add to * * * any building."

We hold that there was sufficient evidence produced upon which the trial court could conclude that Mr. Newcomb was working for a "fixed sum, price, fee, percentage, bonus or other compensation" and that he had undertaken to "add to" the office building leased by Dr. Rose. See Barker v. General Petroleum Corporation, 72 Ariz. 187, 232 P.2d 390 (1951) and Tovrea v. San Xavier Rock and Sand Company, 4 Ariz.App. 91, 417 P.2d 725 (1966). We, therefore, affirm the judgment of the trial court that the plaintiffs were acting as contractors, unlicensed in the State of Arizona, and were consequently prohibited by A.R.S. § 32–1153 from bringing this action.

We find no merit in defendants' contention that this appeal is frivolous and, therefore, they are not entitled to attorney's fees arising from this appeal.

Affirmed.

MOLLOY and KRUCKER, JJ., concur.