IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOHNSON UTILITIES L.L.C., an Arizona limited liability company,
*Petitioner*,

*v.*

ARIZONA CORPORATION COMMISSION; TOM FORESE, BOB BURNS,
ANDY TOBIN, BOYD W. DUNN, and JUSTIN OLSON, in their official
capacities as members of the Arizona Corporation Commission,
*Respondents*.

No. 1 CA-SA 18-0197
FILED 3-7-2019

Special Action – Arizona Corporation Commission
No.  WS-02987A-18-0050
The Honorable Sarah N. Harping, Administrative Law Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Fredenberg Beams, LLC, Phoenix
By Daniel E. Fredenberg, Christian CM Beams

Crockett Law Group, PLLC, Phoenix
By Jeffrey W. Crocket
*Co-Counsel for Petitioner*

Arizona Corporation Commission, Phoenix
By Andrew M. Kvesic, Maureen A. Scott, P. Robyn Poole
*Counsel for Respondents*

---

**OPINION**

Judge Peter B. Swann delivered the opinion of the court, in which Presiding Judge Kenton D. Jones and Judge David D. Weinzweig joined.

---

**S W A N N**, Judge:

¶1        Johnson Utilities L.L.C. seeks special action relief from the Arizona Corporation Commission's order appointing a third-party interim manager to conduct Johnson Utilities' operations. It argues that the Commission lacks authority to interfere with the internal management of a public service corporation, and therefore that the Commission lacked jurisdiction to issue the interim management order.

¶2        We accept jurisdiction but deny relief. Both the Commission's broad ratemaking power under Ariz. Const. art. 15, § 3, and its statutorily delegated power to determine a "just" remedy for "inadequate" public-utility equipment, facilities, or services under A.R.S. § 40-321(A), provide the Commission with sufficient authority to impose an interim manager under appropriate circumstances. It is for the superior court, however, to decide whether the circumstances in this case supported the Commission's authority to issue the interim management order.

**FACTS AND PROCEDURAL HISTORY**

¶3        Johnson Utilities is a public service corporation that provides water and wastewater services in Pinal and Maricopa Counties. In March 2018, the Commission held a 14-day hearing regarding the adequacy of Johnson Utilities' operations and issued a decision finding several significant concerns with its billing practices and financial management, as well as with the condition of its equipment and facilities. Finding it "just and reasonable and in the public interest," the Commission appointed EPCOR Water Arizona (another water utility provider in the area) to "conduct the business and affairs" of Johnson Utilities as an interim manager. The Commission further ordered that Johnson Utilities may apply for termination of the interim management appointment with EPCOR "upon a showing that [Johnson Utilities'] services . . . are in all respects just, reasonable, safe, proper, adequate, and sufficient and that terminating the [appointment] would not present an unreasonable risk of service."

**¶4** Johnson Utilities filed several actions protesting the Commission's order, including three unsuccessful requests to enjoin its enforcement. Johnson Utilities also filed a "Statutory Special Action" with the Arizona Supreme Court, and that court issued an order declining jurisdiction "without prejudice to refile in the court of appeals." Johnson Utilities now petitions this court for special action review.

**¶5** We issued a brief order accepting jurisdiction and denying relief on September 21, 2018, noting that an opinion would follow. This is that opinion.

## JURISDICTION

**¶6** We accepted special action jurisdiction because Johnson Utilities' petition presents a purely legal issue of immediate statewide importance. *See Ariz. Corp. Comm'n v. State ex rel. Woods*, 171 Ariz. 286, 287–88 (1992).[1]

## DISCUSSION

**¶7** Johnson Utilities contends that only the superior court, and not the Commission, has authority to order that a third-party interim manager operate a public service corporation. The ultimate question of whether the Commission's order was justified on the merits must be decided on a case-by-case basis. We will not engage in such a fact-intensive inquiry here. Instead, we address only the narrow legal issue presented by this special action—whether an order for an interim manager falls within the jurisdiction of the Commission.

**¶8** "The Arizona Corporation Commission, unlike such bodies in most states, is not a creature of the legislature, but is a constitutional body which owes its existence to provisions in the organic law of this state." *Miller v. Ariz. Corp. Comm'n*, 227 Ariz. 21, 24, ¶ 12 (App. 2011) (citation

---

[1] Both parties present novel arguments regarding jurisdiction. The Commission argues that under A.R.S. § 40-254(F), special action jurisdiction in this matter lies solely with the supreme court, and therefore this court does not have jurisdiction to review the petition. Johnson Utilities argues that § 40-254(F) creates a "statutory special action" under Ariz. R.P. Spec. Act. 1(b), which *mandates* that the petitioned court accept review. But because the supreme court explicitly permitted Johnson Utilities to refile its petition with this court, and because we accept jurisdiction based on the discretionary factors under Ariz. R.P. Spec. Act. 1(a), we need not address either argument here.

omitted); *see also State v. Tucson Gas, Elec. Light & Power Co.*, 15 Ariz. 294, 302, 306 (1914) (referring to the Commission as a fourth branch of state government). The Commission derives its power to govern public service corporations from two sources: Article 15 of the Arizona Constitution and Title 40 of the Arizona Revised Statutes. *See Phelps Dodge Corp. v. Ariz. Elec. Power Coop.*, 207 Ariz. 95, 111, ¶ 54 (App. 2004). The Arizona Constitution grants the Commission authority to set "just and reasonable" rates subject to the requirements of Ariz. Const. art. 15, § 12, and to enact any rules, regulations, or orders that are "reasonably necessary steps in ratemaking." Ariz. Const. art. 15, § 3; *Woods*, 171 Ariz. at 294. All other powers are left to the Legislature, which may delegate its own power to the Commission by statute, thus enlarging the Commission's powers and duties. Ariz. Const. art. 15, § 6; *Phelps Dodge*, 207 Ariz. at 111, ¶ 54. The Commission is required to exercise its power, constitutional or statutory, in the public's interest. *Woods*, 171 Ariz. at 291–92.

I.      THE ARIZONA CONSTITUTION PROVIDES THE COMMISSION AUTHORITY TO IMPOSE AN INTERIM MANAGER.

**¶9**          Article 15, Section 3 of the Arizona Constitution includes, in pertinent part, the following four clauses:

> The corporation commission shall have full power to, and *shall*, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and
>
> make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state, and
>
> *may* prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and
>
> make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations . . . .

(Line-breaks and emphasis added.)

**¶10** The supreme court originally interpreted Section 3 to establish a broad grant of power to the Commission. *See Tucson Gas*, 15 Ariz. at 302 ("It was clearly the policy of the framers of the Constitution, and the people in adopting it, to take the powers of supervision, regulation, and control of public utilities from the legislative branch and vest them in the Corporation Commission . . . ."). The court then changed course and interpreted the provision narrowly—concluding that only the first clause contained an express grant of power—and held the Commission's constitutional power was therefore limited to setting reasonable classifications, rates, and charges. *See Corp. Comm'n v. Pac. Greyhound Lines*, 54 Ariz. 159, 172–73 (1939) (noting that reading Section 3 too expansively would result in other constitutional provisions becoming "so much Dead Sea fruit turning to ashes upon the lips" (quoting *Ariz. E. R.R. v. State*, 19 Ariz. 409, 411–12 (1918))). Years later, the court interpreted Article 15 and *Pacific Greyhound* to give the Commission the constitutional authority to enact "rules, regulations, and orders concerning such classifications, rates, and charges." *Ethington v. Wright*, 66 Ariz. 382, 391–92 (1948).

**¶11** More recent decisions afford deference to the Commission's determination of whether a rule, regulation, or order is "reasonably necessary for effective ratemaking," interpreting "necessity in light of the framers' intent of the Commission's function . . . to protect consumers from abuse and overreaching by public service corporations." *Woods*, 171 Ariz. at 294–95; *see Miller*, 227 Ariz. at 28–29, ¶¶ 27, 31 (deferring to the Commission's determination of whether a "sufficient nexus" exists between a rule and the Commission's ratemaking authority). On the other hand, to "protect regulated corporations from over-reaching and micro-management of their internal affairs by the Commission," *Miller*, 227 Ariz. at 27, ¶ 23, courts also must consider whether a proposed rule, regulation, or order "so interfere[s] with management functions that [it] constitute[s] an attempt to control the corporation rather than an attempt to control rates," *Woods*, 171 Ariz. at 297.[2]

---

[2] Notably, throughout the century of jurisprudence on Ariz. Const. art. 15, § 3, comparatively little focus has been placed on the force of the fourth clause, which gives the Commission broad authority to make and enforce orders affecting public welfare. *See Pac. Greyhound*, 54 Ariz. at 168, 176–77 (discussing only the first two clauses); *Woods*, 171 Ariz. at 294–96 (same); *but see Ariz. E. R.R.*, 19 Ariz. at 414–16 (discussing in dicta whether the fourth clause's permissive language, when read together with the other clauses, gives the Legislature and the Commission concurrent jurisdiction

**¶12** Although no Arizona court has explicitly reviewed the legality of imposing a third-party interim manager to run a public service corporation, courts have reviewed other measures that interfered with management.[3] We look to these decisions—including particularly *Woods*, *Phelps Dodge*, and *Miller*—and to the text of the constitution for guidance.

**¶13** In *Woods*, the supreme court held that it was within the Commission's ratemaking power to require Commission approval for "all transactions between a public service corporation and its affiliates that may significantly affect economic stability and thus impact the rates charged by a public service corporation." 171 Ariz. at 295. The court addressed arguments that the proposed rules would impermissibly interfere with a corporation's management, but held that monitoring transactions between public service corporations and their affiliates had become necessary to ensure the economic viability of the utility companies. *Id.* at 295–97. The court reasoned that a utility company's economic viability would impact its rates. *Id.* at 297. *Woods* minced no words in its characterization of the Commission's power: "The Commission was not designed to protect public service corporations and their management but, rather, was established to protect our citizens from the results of speculation, mismanagement, and abuse of power," *id.* at 296, and "[t]o put it simply, the Commission was given the power to lock the barn door before the horse escapes," *id.* at 297.

**¶14** In *Phelps Dodge*, we reviewed several policy-driven rules, which the Commission maintained were necessary to effect its ratemaking power. 207 Ariz. at 101–02, 112–15, ¶¶ 4–9, 57–76. One of the rules required that utility companies sell off "competitive generation assets and

---

in non-ratemaking areas); *Ariz. Corp. Comm'n v. Palm Springs Util. Co.*, 24 Ariz. App. 124, 127–28 (App. 1975) (referring to the Commission's authority to make orders respecting "convenience, comfort, and safety").

[3] This is not the first time the Commission has ordered the appointment of an interim manager for a public service corporation. The Commission points to several instances in which it issued interim management orders for a troubled public utility, including Acme Water Company, LLC in 2017 (Comm'n Dec. No. 75871, http://docket.images.azcc.gov/0000176137.pdf), Citrus Park Water Company in 2014 (Comm'n Dec. No. 74832, http://docket.images.azcc.gov/0000159298.pdf), and American Realty and Mortgage Company, doing business as Hacienda Acres Water System, in 2008 (Comm'n Dec. No. 70609, http://docket.images.azcc.gov/0000090590.pdf).

competitive services," and that, if companies opted to sell those assets to an affiliate, they had to do so at a fair price as determined by the Commission. *Id.* at 113, ¶ 62. We held that under its ratemaking power, the Commission could control the price of an asset in a sale between a utility company and its affiliate to avoid unfair cross-subsidization, but that it could not require utility companies to sell off competitive assets when it could simply have required the companies to not *use* the assets competitively. *Id.* at 113–14, ¶¶ 64–66. Acknowledging that the point at which managerial interference becomes impermissible can be difficult to discern, we noted that "our supreme court [in *Woods*] has suggested that the line is drawn between rules that attempt to control rates, which are permissible, and rules that attempt to control the corporation, which are impermissible." *Id.* at 113, ¶ 64. We held that the portion of the rule requiring the sale of assets (as opposed to the portion controlling the sale price to affiliates) was an attempt to control the corporation because there was a less intrusive means to reach the same end, and there was no apparent justification related to ratemaking for taking the more intrusive route. *See id.* at 114, ¶ 66. We also reviewed a rule requiring utility companies planning to offer competitive service through affiliates to file codes of conduct with the Commission for approval. *Id.* at ¶ 70. We held that because the rule required the codes of conduct to include procedures for preventing cross-subsidization between affiliates, which would adversely impact rates, the rule was sufficiently aimed at controlling rates despite interfering with management. *Id.* at ¶¶ 70–71.

¶15 In *Miller*, we held that a sufficient nexus existed between rules requiring public utilities to diversify their energy sources and the Commission's ratemaking power. 227 Ariz. at 29, ¶ 31. We reasoned that "[p]rophylactic measures designed to prevent adverse effects on ratepayers due to a failure to diversify electrical energy sources fall within the Commission's power 'to lock the barn door before the horse escapes.'" *Id.* (quoting *Woods*, 171 Ariz. at 297). We noted that, in exercising its ratemaking authority, "[t]he Commission may take a 'broader view' and consider, for example, risks associated with contemplated action or inaction." *Id.* at 28, ¶ 30. We discussed past applications of the so-called managerial interference doctrine, but because the appellants were utility customers, we found they lacked standing to argue interference, and therefore did not apply the doctrine to restrict the Commission's power. *Id.* at 26–27, ¶¶ 19–23.

¶16 The common thread weaving through *Woods*, *Phelps Dodge*, and *Miller* is that while the managerial interference doctrine requires courts to look with disfavor on interference with a public service corporation's

7

management, the doctrine does not create a bright-line rule that places such interference outside the Commission's jurisdiction. Instead, courts have reviewed the merits of each case to determine whether a failure to interfere could have a deleterious effect on rates or the public welfare. *See also, e.g.,* *S. Pac. Co. v. Ariz. Corp. Comm'n*, 98 Ariz. 339, 343 (1965) ("[A] public utility may, . . . in the exercise of its managerial functions, determine the type and extent of service to the public *within the limits of adequacy and reasonableness*." (emphasis added)); *Miller*, 227 Ariz. at 27, ¶ 23 ("The managerial interference doctrine is a judicial construct designed to protect regulated corporations from *over*-reaching and micro-management of their internal affairs by the Commission." (emphasis added)); *Metro. Edison Co. v. Penn. Pub. Util. Comm'n*, 437 A.2d 76, 80 (Pa. Commw. Ct. 1981) ("An obvious corollary of the [managerial interference doctrine] is that if there has been an abuse of managerial discretion, and the public interest has been adversely affected thereby, then the Commission is empowered to intervene."). The distinction between rules that "attempt to control rates" and rules that "attempt to control the corporation," *Woods*, 171 Ariz. at 297, focuses on what the Commission intends to achieve, and courts have likewise framed their analysis in terms of the Commission's attempted goal or "aim," *see Phelps Dodge*, 207 Ariz. at 113–14, ¶ 65 (holding that a rule aimed at controlling rates was permissible despite its interference with management). Reviewing the development of the doctrine, we hold that neither our precedent nor the broad language of Article 15, Section 3 prohibits control of management incidental to the Commission's attempt to control rates.

¶17 In *Woods* and *Phelps Dodge*, the court only addressed proactive measures that were permanent in nature, not temporary remedial orders. *See Ariz. Corp. Comm'n v. Palm Springs Util. Co.*, 24 Ariz. App. 124, 128 (App. 1975) (recognizing the Commission's ability to accomplish some goals by specific order pertaining to particular companies rather than by rules and regulations of general applicability). In more urgent situations (as well as in situations like those in *Woods* and *Phelps Dodge*), controlling the utility company may be a necessary means to accomplishing the permissible ends of controlling rates, i.e., in situations in which costly financial or structural harm to the corporation is imminent but avoidable. We therefore conclude that the Commission's constitutional ratemaking authority permits, albeit in limited circumstances, the appointment of an interim manager to run a public service corporation.

II.     THE COMMISSION'S STATUTORY POWERS PROVIDE IT
        AUTHORITY TO IMPOSE AN INTERIM MANAGER.

¶18        When the Commission's imposition of an interim manager is not sufficiently related to its ratemaking power, it may nevertheless find authority to issue such an order through its statutory powers. The Legislature has delegated significant authority over public service corporations to the Commission. *See* Ariz. Const. art. 15, § 6; *see generally* A.R.S. tit. 40, ch. 2 (constellation of statutes delegating powers and duties to the Commission). The Commission cites A.R.S. § 40-321(A), among other statutes, as a source of its statutory power to impose an interim manager. Section 40-321(A) provides:

> When the commission finds that the equipment, appliances, facilities or service of any public service corporation, or the methods of manufacture, distribution, transmission, storage or supply employed by it, are unjust, unreasonable, unsafe, improper, inadequate or insufficient, the commission shall determine what is just, reasonable, safe, proper, adequate or sufficient, and shall enforce its determination by order or regulation.

¶19        "[T]he language of a statute is the best and most reliable index of its meaning," *Ariz. Sec. Ctr., Inc. v. State*, 142 Ariz. 242, 244 (App. 1984), and when possible, we will give the statute its plain and obvious meaning, *Bilke v. State*, 206 Ariz. 462, 464, ¶ 11 (2003). Further, we must avoid interpretations that render statutory provisions superfluous or void. *Id.*

¶20        While the Legislature may delegate authority to interfere with the management of public service corporations to the extent that public interest demands, we will not infer any such authority beyond that provided by the "clear letter of a statute." *S. Pac. Co.*, 98 Ariz. at 343; *Burlington N. & Santa Fe Ry. v. Ariz. Corp. Comm'n*, 198 Ariz. 604, 606, ¶ 11 (App. 2000) ("We will not imply any power beyond that expressly bestowed by the statute."). In other words, the language of such statutes will not be "broadened by implication." *Chesapeake & Potomac Tel. Co. v. Manning*, 186 U.S. 238, 248 (1902) (cited by *S. Pac. Co.*, 98 Ariz. at 343). "[T]he standards laid down by the Legislature may be broad and in general terms [and do] not have to supply administrative officials with a specific formula to guide them when flexibility and adaptability are necessary." *Ethridge v. Ariz. St. Bd. of Nursing*, 165 Ariz. 97, 104–05 (App. 1989); *see Phelps Dodge*, 207 Ariz. at 112–13, ¶ 59 (stating that, although the court must read empowering statutes narrowly, a statutory grant of authority may be found

"if such authority 'may be reasonably implied from the statutory scheme so as to carry out the purpose and intent of the legislative mandate'" (quoting *Ethridge*, 165 Ariz. at 105)).

¶21 Section 40-321(A) is broadly worded; it gives the Commission broad authority to remedy certain problems within a public service corporation. The Legislature did not restrict the specific means by which the Commission could enforce "just, reasonable, safe, proper, adequate or sufficient" remedies, except that it do so by "order or regulation." We therefore need not look beyond the express language of this statute to find authority allowing the Commission to impose an interim manager. *See S. Pac. Co.*, 98 Ariz. at 343; *Burlington N. & Santa Fe Ry.*, 198 Ariz. at 606, ¶ 11.

¶22 A reading of § 40-321(A) that permits imposition of an interim manager is consistent with other Arizona statutes. For instance, Title 40, Chapter 2 contemplates broad power for the Commission. *See, e.g.*, A.R.S. § 40-202(A) ("The commission may supervise and regulate every public service corporation in the state and do all things, whether specifically designated in this title or in addition thereto, necessary and convenient in the exercise of that power and jurisdiction."); A.R.S. § 40-361(B) (requiring utility companies to maintain adequate facilities and services for safety of patrons); A.R.S. § 40-331(A) (granting power to make orders requiring public utilities to improve facilities to promote the security and convenience of the public). And two Arizona provisions outside Title 40 contemplate the existence of an interim manager of a public service corporation. *See* A.R.S. § 49-355(B) (permitting monetary grants to "interim operators, interim managers or owners" of small drinking water utility companies to ensure compliance with Title 40, Chapter 2); Ariz. R. Sup. Ct. 31(d)(28) ("In matters before the Arizona Corporation Commission, a public service corporation, an interim operator appointed by the Commission, or a non-profit organization may be represented by a corporate officer, employee, or a member who is not an active member of the state bar . . . .").

III. A.R.S. § 40-422 DOES NOT PROHIBIT THE COMMISSION FROM ISSUING AN ORDER IMPOSING AN INTERIM MANAGER.

¶23 Johnson Utilities argues that under A.R.S. § 40-422(A), the Commission could secure the appointment of an interim manager of a public service corporation only from the superior court. Section 40-422(A) requires the Commission to commence a proceeding in the superior court "to have . . . violations or threatened violations [of an order of the Commission]

prevented, either by mandamus or injunction." This statute provides the Commission a means to enforce its original order, but does not limit the scope of the original order or affect whether the Commission has constitutional or statutory authority to issue the order in the first instance.

## CONCLUSION

**¶24** We accept jurisdiction but deny relief. Subject to the substantive limitations of the managerial interference doctrine, both Ariz. Const. art. 15, § 3, and A.R.S. § 40-321(A) provide the Commission jurisdiction to impose an interim manager for a public service corporation.



AMY M. WOOD • Clerk of the Court
FILED: AA